## Commercial National Bank of Beeville v. First National Bank of Cuero.

### No. 1311. Decided May 12, 1904.

**1.—National Bank—Representations—Ultra Vires.**

The business in which a national bank may engage is limited to the matters specified by the act of Congress under which it is created and those necessary to the exercise of the powers therein expressed; this does not include the making representations as to the genuineness of the signatures of a note sent to it by another bank to procure such signatures as a mere gratuitous accommodation; and it is not bound by representations of its officers that the signatures so procured are genuine. (Pp. 542, 543.)

**2.—National Bank—Authority of President.**

The president of a national bank has no authority conferred on him by law except to preside at the meeting of its directors and have charge of its litigation; in the absence of proof that larger powers were conferred on him by the directors, he has no power to bind the bank by representations as to the genuineness of the signatures to a note. (Pp. 543, 544.)

Error to the Court of Civil Appeals for the First District, in an appeal from De Witt County.

The Cuero bank sued Smith and Ray on a note, joining the Beeville bank on account of representations made as to the genuineness of Ray's

signature.  Plaintiff recovered against Smith and the Beeville bank, Ray getting free on his plea of non est factum.  The Beeville bank appealed, and on affirmance obtained a writ of error from the Supreme Court.

*J. C. Beasley*, for plaintiff in error.—Plaintiff's suit as against the Commercial National Bank of Beeville being an action of deceit, and its petition not containing any averments that the alleged actionable representations made by said defendant were false, nor that they were known by defendant to be false, nor that they were fraudulently made, wholly failed to state a cause of action against said defendant, and the court erred in overruling the general demurrer of said defendant to plaintiff's petition, which was contained in its original answer.  Ewing v. Duncan, 81 Texas, 236; 65 Texas, 89.

*Davidson & Bailey* and *Lackey & Lewright,* for defendant in error.— It is the imperative duty of an agent to follow strictly the instructions given him by his principal, and if the agent disobeys such instructions he does so at his own risk in case of loss resulting from such disobedience.  The instructions given Beeville bank by Cuero bank were plain and specific; because it disobeyed such instructions, it must indemnify the Cuero bank to the extent of the loss directly resulting from such disobedience.  Short v. Skipwith, 1 Brock. C. C., 104; Manelle v. Baary, 3 Cranch, 439; Bank v. Cooper, 137 U. S., 473; Kerr v. Cotton, 23 Texas, 413; Mechem on Agency, sec. 473 et seq.; sec. 481 et seq.; Wharton on Agency, sec. 247; 1 Am. and Eng. Enc. of Law, 2 ed., p. 1058 et seq.; 3 Am. and Eng. Enc. of Law, 2 ed., p. 805, note 4; Bruce v. Davenport, 36 Barb., 349; Hall v. Storrs, 7 Wis., 253; Courcier v. Ritter, 4 Wash. C. C., 549; Foster v. Preston, 8 Cowen, 198; Wilson v. Wilson, 26 Pa. St., 393; Adams v. Robinson, 65 Ala., 586; Vickery v. Lanier, 58 Ky. (1 Met.), 133; Oxford Line v. First Nat. Bank, 24 So. Rep., 480; Marshall v. Ferguson, 67 S. W. Rep., 935; Bell v. Cunningham, 3 Pet., 79; Bowerman v. Rogers, 125 U. S., 590; Franklin Ins. Co. v. Bradford, 55 Law Rep. Ann., 408; McGee v. Bast, 6 J. J. Marsh., 453; Morse on Banks, 4 ed., p. 467; note on page 606 of vol. 7 Co-Op. Ed. of U. S. Reps.

Beeville bank is estopped to urge as a defense that it used due care in procuring Ray's signature to the note.  Bigelow on Estoppel, 610, 611, citing Weinstein v. Nat. Bank of Jefferson, 69 Texas, 38, to the effect that actual knowledge of the falsity of the representation made is unnecessary.  That negligence is often treated as a substitute or equivalent for actual knowledge or intent to mislead, see 11 Am. and Eng. Enc. of Law, 2 ed., p. 432, citing authorities.

The Beeville bank was not really an uncompensated agent, although not paid in cash for its trouble in this matter.  The cashier of the Cuero bank testified that if any charge for the service had been made by the Beeville bank, such charge would have been paid.  It is evident

that the Beeville bank sought by its service to gain the good will of the Cuero bank and thereby possibly to increase its future business, etc. On this point see Morse on Banks, 4 ed., p. 488.

Even if treated as an uncompensated agent, Beeville bank is still liable, because, while not required to undertake the commission assigned to it, when it did undertake to serve the Cuero bank, it was bound to follow the latter's plain and specific instructions. An uncompensated agent is not liable for nonfeasance, but he is liable, equally with the paid agent, for any loss caused by his disregard of the principal's positive instructions, when he once undertakes the duty assigned. On this point see Murrah v. Brichta, 9 S. W. Rep., 185; Walker v. Smith, 4 Dall., 389; Williams v. Higgins, 30 Md., 404; Marshall v. Ferguson, 67 S. W. Rep., 935; Short v. Skipwith, 1 Brock C. C., 104; Kaw Brick Co. v. Hogsett, 73 Mo. App., 432; Wharton on Neg., secs. 437, 438, and 499-509; Morse on Banks, 4 ed., p. 488; Mechem on Agency, secs. 478 and 498; 1 Am. and Eng. Enc. of Law, 2 ed., pp. 1060, 1070, note 5; 3 Am. and Eng. Enc. of Law, 2 ed., p. 802, sec. 2 (2); 5 Am. and Eng. Enc. of Law, 2 ed., p. 507, note 4.

While the earlier cases usually held that an uncompensated agent is liable only for gross negligence, the more recent tendency has been to disregard the fine-spun distinctions as to gross negligence, ordinary negligence and slight negligence. On this point see Murrah v. Brichta, 9 S. W. Rep., 185; Diamond Co. v. Groesbeeck Bank, 29 S. W. Rep., 169; Mechem on Agency, sec. 488 et seq.; 1 Am. and Eng. Enc. of Law, 2 ed., pp. 1063, 1070.

The Beeville bank is liable, although uncompensated, because it held itself out as possessed of peculiar skill in its line of business and was therefore bound to use the same degree of care in all matters intrusted to it, without regard to compensation for the service. On this point see Mechem on Agency, sec. 498; 1 Am. and Eng. Enc. of Law, 2 ed., p. 1070 (b).

The Beeville bank is liable because in its letter to the Cuero bank it stated absolutely as a fact something which was not true, to wit, that the note was "properly signed up," and it could with slight diligence have known the falsity of that statement. In other words, the Beeville bank, in thus writing the Cuero bank, acted recklessly and negligently. On this point see 1 Bigelow on Fraud, p. 513; 14 Am. and Eng. Enc. of Law, 2 ed., pp. 97, 99.

The Beeville bank is liable although it did not actually foresee or even suspect the injury resulting from its failure to obey orders. On this point see 14 Am. and Eng. Enc. of Law, 2 ed., p. 179.

The Beeville bank is liable because of its legal or constructive fraud; moral fraud is not essential to our cause of action. On this point we call attention to the authorities cited in our brief in Court of Civil Appeals, as also to the following authorities: Seale v. Baker, 70 Texas, 287; Giddings v. Baker, 80 Texas, 314; Byers v. Maxwell, 73 S. W. Rep., 437.

It is immaterial that the Beeville bank in its own business dealings with Smith trusted him as implicitly as it did in this instance. On this point see Murrah v. Brichta, 9 S. W. Rep., 185; Mechem on Agency, sec. 485; 1 Am. and Eng. Enc. of Law, 2 ed., 1062.

The Cuero bank used all of the care which any prudent business man could possibly have used under the circumstances; the Beeville bank was entirely innocent of any moral wrongdoing, but by its act it placed it within Smith's power to perpetrate the fraud upon the Cuero bank— for which reason the Beeville bank must stand the loss resulting from its misplaced confidence in Smith. On this point see W. U. Tel. Co. v. Uvalde Bank, 72 S. W. Rep., 232; 1 Thomp. on Neg., p. 35, note 32; Herman on Estoppel, p. 1222, note 3; Mechem on Agency, sec. 514, p. 350; 3 Am. and Eng. Enc. of Law, 2 ed., p. 809, note 3.

Beeville bank is justly liable, (a) because it disregarded Cuero bank's plain instructions and thereby caused a loss; (b) because it was guilty of gross negligence in sending the note to Smith in place of mailing it to Ray; (c) because it placed Smith in a position to defraud Cuero bank, the latter being both innocent and highly diligent; (d) because it recklessly misled Cuero bank by falsely stating that the note had been "properly signed up" by Ray, without explaining how it had performed the duty assigned to it and satisfied itself as to the fact thus affirmed to be true.

We submit that this court erred in holding that the general demurrer of Beeville bank should have been sustained, because the petition of the Cuero bank failed to allege such facts as would show that the acts complained of by Cuero bank were within the charter powers of Beeville bank. We understand the law to be that the question of ultra vires can not be taken advantage of under the general demurrer, but that such defense must be specially raised. On this point see Citizens Bank v. Pence, 59 Neb., 579; Weber v. Ancient Order (Mo.), 78 S. W. Rep., 650; Louisville Co. v. Stewart (Ky.), 70 S. W. Rep., 285; Griesa v. Mass. Benefit Assn., 15 N. Y. Supp., 71, and 133 N. Y., 619; Ohio & M. Ry. Co. v. McCarthy, 96 U. S., 258; West v. Averill Co., 109 Iowa, 488; Dana v. Bank of St. Paul, 4 Minn., 385; Morris Ry. v. Sussex Ry., 20 N. J. Eq., 542; Rider Co. v. Roach, 97 N. Y., 378; De Groff v. Am. Linen Thread Co., 21 N. Y., 124; Patterson v. Robinson, 116 N. Y., 193; 5 Am. and Eng. Enc. of Prac., pp. 95, 96; Abbott's Trial Briefs, 2 ed., p. 387, note 200; Markowitz v. Greenwall Co., 75 S. W. Rep., 77.

BROWN, ASSOCIATE JUSTICE.—We copy the statement of the case and conclusions of fact of the Court of Civil Appeals, as follows:

"This action was brought in the District Court of De Witt County by the appellee against W. H. Smith and J. F. Ray to recover upon a promissory note for the sum of $2066.66, dated November 27, 1901, payable at Cuero, Texas, and alleged to have been executed by them to the appellee. The appellee also made the appellant a party to the

suit and sought to recover against it, alleging that the appellant had undertaken, as the agent of appellee, to have the note sued on signed by Smith and Ray and had sent the same to appellee with the representation that it had been so signed; and that appellee had acted on such representation and had advanced the sum of $2000 on the note to Smith, against whom no recovery could be had on account of his insolvency; that Ray was solvent but claimed that the note as to him was a forgery; and that in the event the note was a forgery appellant was liable to appellee for the amount so advanced by it to Smith on account of its deceitful representations.    Defendant Smith filed no answer. Defendant Ray answered under oath denying the execution of the note by him.    The appellant pleaded in abatement to the venue of the suit, asserting its privilege to be sued in Bee County, where it had its domicile.    It also pleaded the general demurrer; a special demurrer to the venue; a special demurrer raising the question of misjoinder; and in bar the general denial.

"The pleas to the venue and the general demurrers were overruled by the court and afterwards the cause was submitted for trial to the court without a jury and resulted in a judgment in favor of the appellee for the amount of the note and costs against Smith and the appellant and in favor of the defendant Ray.    The questions presented to this court on appeal are:    (1)    The sufficiency of the petition to show a cause of action for deceit against the appellant.    (2)    The misjoinder of parties defendant.    (3)    Venue of the suit as to the appellant.    (4)    The sufficiency of the facts to show that the appellant is liable.    The facts upon which the suit is founded transpired in the making of a loan of $2000 by the First National Bank of Cuero, Texas, to W. H. Smith.    Smith, who resided at Mineral City, in Bee County, wrote to the bank at Cuero requesting the loan, and offered as surety James F. Ray, who was a wealthy stockman of Bee County and resided at Pettus in that county.    Ray was vice president and director of the appellant bank and an uncle by marriage of Smith.    The Cuero bank wrote to the First National Bank of Beeville, in Bee County, its correspondent, stating that Smith had applied for the loan and had offered Ray as surety; that it was unacquainted with them and asked about their responsibility.    The First National Bank of Beville replied in due course of mail, saying that the parties were good for the amount of money; that Smith was a merchant in good standing; that Ray was a man of property and an official of the Commercial National Bank; that Smith was a former patron of that bank, and that it was acquainted with their signatures.    The Cuero bank then prepared for signature the note sued on in Cuero and mailed it with a letter to the Commercial National Bank, saying: 'A few days since we had a letter from Wm. H. Smith of Mineral City, Texas, making application for a loan of $2000 and offering as security James F. Ray, vice-president of your bank.    Will you do us the kindness to hand the inclosed note to Mr. Ray for signature by himself and Mr. Smith?

Thanking you in advance,' etc. Upon receipt of this letter and the note the appellant, by its president, John W. Flournoy, mailed the note in a letter to Wm. H. Smith, at Mineral City, requesting him to get Mr. Ray's signature and return to the writer. A letter was received returning the note as follows: 'Pettus, Texas, 11-20-01.—The Commercial National Bank of Beeville, Beeville, Texas: Dear Sir.—Inclosed find note as per request. You will please forward to the Cuero bank and tell them to place to my credit. Respectfully, Wm. H. Smith.' The letter was opened by Flournoy in presence of the bookkeeper of the appellant bank and the signatures to the note were examined and pronounced genuine by both of them. Flournoy at once wrote a letter from Beeville to the appellee at Cuero in which he inclosed the note and mailed it. The letter was as follows: 'Commercial National Bank of Beeville, Beeville, Texas, 12-2-01.—First National Bank of Cuero, Cuero, Texas: Dear Sirs.—Inclosed you will find note of Wm. H. Smith, properly signed up. He wants the proceeds of said note placed to his credit. Yours truly, John W. Flournoy, President.' The note was received and the money was advanced by the appellee to Smith. The signature of Ray to the note was found to be a forgery, but was pronounced to be a most clever one. Both Flournoy and the bookkeeper, Miller, testified that 'If the signature of Ray to this note is a forgery then it is a most expert and adroit one and calculated to deceive the most careful, and greatly did deceive this witness.'

"Smith belonged to a family of people who stood high in Bee County, well known for probity and honesty, and who had occupied positions of public honor and trust. Wm. H. Smith himself had been a young man of excellent habits, and at the time of this transaction and for a number of years prior thereto he was engaged in the mercantile business in Mineral City, in Bee County, a small village about seventeen miles northwest of Beeville. His standing and credit among business men were of the highest order. His business seemed to be successful and profitable and of large volume; and for some years he had done business with appellant, his transactions amounting in the year 1900 to $70,000. He had the confidence of the officers of the bank and it carried him without security cometimes for as much as $10,000. Not long before this transaction the bank had loaned him $500 with Ray as surety, and the note for the money was prepared and mailed to him at Mineral City with the request to sign and get Ray's signature and then return to the bank; and the money was paid to Smith on return of the note by him. Ray lived at the little village of Pettus, about sixteen miles north of Beeville, and did business with the appellant bank, and was personally and intimately known to the officers of the bank. The correspondence of Smith and Ray with the bank had been voluminous, and Flournoy and Miller had seen them write and both testified that they were familiar with and knew their signatures, and that they had no reason or ground to suspect that either of them was forged, but believed they were genuine. The Cuero bank was not

acquainted with Smith or Ray and did not know their signatures. It trusted the appellant bank to get the note signed, and believed its representation that it had been properly signed and on that account alone let Smith have the money. Appellee would not have loaned the money on Smith's signature alone. No charge was made by the appellant for the service it rendered, and the appellee did not offer or expect to pay for it, but would have done so if required. The appellant is a national bank duly incorporated under the national banking act of Congress, with its domicile at Beeville, in Bee County, Texas, and the appellee is also a national bank duly incorporated under the national banking act, with its domicile at Cuero, in De Witt County, Texas."

Representations made by an officer or agent of a corporation will not create liability upon the corporation unless the representation be made by the agent concerning a business which the corporation is empowered by its charter to do, and the agent must, at the time, be acting within the scope of his authority. Cooley on Torts, 136.

The facts alleged in the petition show that the plaintiff in error is a corporation, created under the national banking laws enacted by the Congress of the United States, hence to that law we must look to determine the kind of business in which a bank may engage. That act provides: "Upon duly making and filing articles of association and an organization certificate, the association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such and in the name designated in the organization certificate, it shall have power: * * *

"Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; receiving deposits, buying and selling exchange, coin, and bullion, by lending money on personal security, and by obtaining, issuing and circulating notes according to the provisions of this title."

"The business of banking" is defined to consist in discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; receiving deposits, buying and selling exchange, coin and bullion, lending money on personal security, and obtaining, issuing and circulating notes; and to these specified powers and those necessary to the exercise of the powers expressed the bank must confine its operations, and acts of officers not embraced in the terms of the law are not binding upon the corporation. Weckler v. First Nat. Bank, 42 Md., 581; Merchants Nat. Bank v. Armstrong, 65 Fed. Rep., 934; Cooley on Torts, 136.

The facts alleged against the plaintiff in error do not show a transaction embraced in the provisions of the law above quoted; on the contrary, it was a matter in which the Beeville bank was not interested; in fact it was a mere courtesy between the officers of the two banks,

performed gratuitously by Flournoy for the accommodation of the officers of the Ceuro bank to aid them in making a loan to Smith.

If it were held that procuring the signature to a note in order that the Cuero bank might lend money to a third party was within the power and authority of the bank at Beeville, the president of the Beeville bank was not authorized to transact such business for his bank and did not bind it by the statements he made. Under the national banking law the corporation was authorized to elect a board of directors, to which was committed the management and control of the bank, and the board was empowered to select one of its members as president of the bank, of whom it is said: "It is his duty to preside at the meeting of the board of directors, and he has charge of the litigation of the bank, and other than these he has no power inherent over and beyond another director." National Bank Act, by Bolles, sec. 53. The board could have adopted by-laws conferring larger powers upon the president, but the petition does not allege the existence of such by-laws, nor any fact which would extend the authority of the president so as to embrace the act upon which this action rests. The statement made by Mr. Flournoy that the note returned was signed up by Mr. Ray was without authority of the Beeville bank, therefore not binding upon it. United States v. Bank of Columbus, 21 How., 356; Weckler v. Nat. Bank, 42 Md., 581; Merchants Bank v. Marine Bank, 3 Gill (Md.), 96; Crawford v. Bank, 67 Mo. App., 39; Houston & T. C. Ry. Co. v. McKinney, 55 Texas, 176.

United States v. Bank of Columbus, before cited, involved a state of facts much like this case. The cashier of the defendant bank gave to one of its directors, Mr. Miner, a statement that he was authorized on behalf of the bank to "contract with the Treasury. Department of the United States for the transfer of money, from the East to the South and West, for the government," and upon the faith of the statement of the cashier, the Secretary of the Treasury contracted with the party named for the transfer of $100,000 from New York to New Orleans. Miner received and cashed the draft, but the government did not receive the money at New Orleans. Upon suit by the United States against the bank, the Supreme Court of the United States held that the cashier had no authority to make such representations on behalf of the Columbus bank and that it was not liable for the loss sustained in consequence of reliance upon the false statement.

Crawford v. Bank is much like this case. A firm of merchants secured from the cashier of a bank a statement to the effect that the firm was "solvent and would pay for all that they would buy." Upon this statement the firm obtained credit, and having failed in business, it was sought to hold the bank responsible for the loss. The court held that the cashier had no authority to give such statement, therefore the bank was not responsible for the damages.

The act of Flournoy, who signed the statement as president of the Beeville bank, was a mere personal transaction of his own, and if any

liability was created thereby it rested upon him individually and not upon the bank. We do not, however, wish to be understood as intimating that the facts would give a cause of action against Flournoy; that question is not now before us.

The allegations in the plaintiff's petition presented no cause of action against the Commercial National Bank of Beeville, and the general demurrer should have been sustained. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed as to the Commercial National Bank of Beeville only, and this cause be remanded for further trial as to said bank, but the judgments as to Ray and Smith remain in force.

*Reversed and remanded in part.*