**FRANCIS OIL & REFINING CO. v. DAVID A. MANVILLE & CO., Inc.**

(Circuit Court of Appeals, Second Circuit.   January 7, 1924.)

No. 143.

1. **Brokers ⬅28—Corporation entitled to an accounting for treasury stock sold by brokers on commission.**

     A contract by a corporation with brokers to sell treasury stock of the corporation on a commission is of a fiduciary nature and· entitles the corporation to an accounting for stock sold.

2. **Corporations ⬅408—Selling of treasury stock not within scope of officer's·authority.**

     The selling of treasury stock of a corporation is not within the scope of the authority of an officer of the corporation, in the absence of appropriate authority conferred by the directors or the corporations. as the case may be, acting in accordance with the provisions of an applicable statute and of by-laws or resolutions properly adopted.

3. **Corporations ⬅202—Stockholders may maintain suit to enforce rights arising out of unauthorized contract.**

     Stockholders may maintain a suit in their own names or in the name of the corporation to enforce rights arising out of a contract made by its officers without authority.

4. **Equity ⬅65(1)—Maxim of clean hands does not apply as between wrongdoers, where those suffering from the wrong, and who will benefit by a recovery are innocent third parties.**

     That a corporation, through its officers, joined with a broker in a fraudulent scheme to induce its stockholders to buy additional stock, is not a defense to a suit by the corporation against the broker to recover the proceeds of such sales, the victims of the fraud being, not the corporation itself, but some of its stockholders, to whose benefit a recovery will in part inure.

5. **Corporations ⬅499—Corporate action not defeated because recovery will inure in part to guilty stockholders.**

     Recovery by a corporation will not be defeated because it will inure in part to the benefit of some stockholders who, because of their fraud, could not recover in their own right.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Francis Oil & Refining Company against David A. Manville & Co., Inc. Decree for complainant, and defendant appeals. Affirmed.

Certiorari denied 44 Sup. Ct. 404, 68 L. Ed. ——.

Plaintiff is an Oklahoma corporation engaged in the manufacture and production of crude oil and its by-products. Its capitalization is $500,000 repre-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sented by 500,000 shares of common stock of the par value of $1 each, and on February 1, 1922, about 240,000 shares were issued and outstanding. Defendant is a New York corporation engaged in buying and selling stocks of other companies on a commission basis. By reason of certain transactions infra, plaintiff filed its complaint, praying for an injunction and accounting. Defendant answered, and the issues were sent to a special master.·

His careful report, approved by the District Court, clearly stated the facts out of which the questions of law arise. What follows is a summary of that report.

About February 1, 1922, plaintiff received from defendant a circular letter offering its services in selling plaintiff's treasury stock. In answer to defendant's letter of February 1st, a letter, dated February 14, 1922, signed "Francis Oil & Refining Co., by C. M. Martin, Sec. Treas," was sent to defendant, stating, "We would be interested in placing with you at least 100,000 shares of our stock to be sold by you in the state of N. Y. or in any state where there would be no blue sky law at $2.00 per share for which we would be willing to allow you a commission of 40%."

As the result of further negotiation, a written agreement was entered into. This agreement was dated March 10, 1923, but was not signed by defendant until March 23, 1922. This paper was signed as follows:

"Francis Oil & Refining Company,
"[Corporate Seal.]                    By G. T. Blankenship, President.
                    "David A. Manville & Co., Inc.,
"[Corporate Seal.]                    By S. Homer Federman, President.
"Attest: C. M. Martin.
"Attest:· J. M. Black, Secretary."

Prior to March 23, 1922, plaintiff sent defendant at its request the 'list of names of its 279 New York stockholders of record, a photograph of its plant, a statement of its assets as of March 1, 1922, and certain information to be incorporated in a pamphlet, which was printed at defendant's expense and used in soliciting subscriptions to plaintiff's capital stock. This pamphlet represented to its readers that the purpose of its stock offerings then contemplated by plaintiff was to raise funds to increase its working capital.

Defendant prepared the form of a circular letter which it desired plaintiff to send to its New York stockholders. This letter, known in the case as Exhibit 43, was sent to these stockholders. After some alluring preliminary statements, it read:

"Our consistent progress, together with certain developments which are soon to crystallize in the affairs of your company, which will tend to enhance the value of your shares greatly, have attracted the attention of David A. Manville & Co., Inc, Investment Bankers of 80 Wall Street, New York, N. Y., who have approached us with a view to purchasing the unsold portion of the capital stock. It is their intention to have the shares listed on one of the leading markets.

"After considerable negotiations, we have come to a definite understanding with this firm and in closing our contract we did so with one express stipulation, namely that prior to any public offering, our shareholders should be given certain beneficial allotment rights. We have arranged for a representative of David A. Manville & Co., Inc., to call upon you shortly, in order to explain these rights and we urge you to pay very strict attention, inasmuch as it is of the utmost importance to you.

"We believe that the profits from your investments in the shares of this company will exceed your fondest expectations. * * * "

The statements in this letter that defendant had approached plaintiff with a view to purchasing the unsold portion of plaintiff's capital stock, and that, in closing the contract an express stipulation was made that beneficial "allotment rights" should be given shareholders prior to any public offering of the stock were false, and were known by both parties to be false at the time they were made.

Other details in furtherance of the scheme followed with the result that defendant sold for $27,160 cash 13,580 shares at $2 per share to a considerable number of New York stockholders, and 4,300 shares to New York stockholders

on partial payment agreements upon which a total of $3,900 on account was paid.

On May 3, 1922, plaintiff telegraphed defendant to stop selling. At the date when this telegram was received the situation was: (1) Defendant had collected a total of $31,060 ($27,160 plus $3,900 supra); and (2) had secured 44 subscriptions for an aggregate of 17,880 shares of plaintiff's capital stock.

Defendant under the terms of the agreement of March 10, 1922, was obligated to remit to plaintiff 50 per cent, i. e., $15,530. It had sent plaintiff only $1,405, and had not sent the subscriptions for the issue of the stock. After certain detail of adjustment, the net amount withheld by defendant was $13,700.

Upon this state of facts the District Court entered a decree requiring defendant to turn over to plaintiff $13,700 with interest and also to surrender the subscription agreements to plaintiff. Further, the decree enjoined defendant from doing anything to induce subscribers to cancel their agreements to purchase plaintiff's stock.

Louis Karasik, of Brooklyn, N. Y. (Joseph G. M. Browne and Barnett E. Kopelman, both of New York City, of counsel), for appellant.

Joseph A. Seidman, of New York City (Leslie Lester, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1] The questions here presented are well considered in the opinion of Judge Learned Hand. We agree with him that the agreement between the parties is of a fiduciary nature, which obligated defendant to account to plaintiff.

[2] We think, also, that the agreement, displayed in the contract dated March 10, 1922, was not one which could be made by the president of plaintiff without authority of the directors or the corporation, and there is no evidence that such authority was given or that there was any acquiescence by the directors or the corporation in any of the arrangements which, on this record, were made by plaintiff's president, Blankenship, and/or the secretary treasurer, Martin.

The selling of the stock, as in this case, is not one of the acts within the scope of the authority of an officer of a corporation, in the absence of appropriate authority conferred by the directors or the corporation, as the case may be, acting in accordance with the provisions of any applicable statute and of by-laws or resolutions properly adopted.

[3] Hence, these transactions could not prevent the stockholders of plaintiff either from bringing such suit in their individual capacity as they might be advised or of seeking recovery against defendant through plaintiff in its corporate capacity. But we are not content to dispose of the case on one ground only; for an important principle is involved, and it may well be that this is not the only case of its kind.

It is difficult to be temperate in characterizing the fraud here practiced. Defendant itself proclaims the fraud and adopts the special master's well justified denunciation when he stated that the facts as established by the testimony of the president treasurer of defendant "reveal a course of fraud, bad faith, and dishonesty on its part that seldom finds its way into the records of this court."

[4] But defendant argues that plaintiff does not come into a court of equity with clean hands, and therefore, under Primeau v. Granfield, 193 Fed. 911, 114 C. C. A. 549, defendant may hold the proceeds of the fraud as against plaintiff.

But, as pointed out by the district judge:

"If the suit were between individuals, it would indeed be hard to resist the authority of Primeau v. Granfield, 193 Fed. 911, 114 C. C. A. 549 (C. C. A. 2). Then it would be a suit by a beneficiary against his fiduciary for moneys which the fiduciary had collected from third persons, by means of a fraud in which both had joined. A court of equity would scarcely meddle in their quarrels.

"I think the distinction suggested by the master is, however, good. The real sufferers from the fraud, so far as it was successful, were the stockholders themselves. They were defrauded first by the letter, and will again be if this suit should fail. Of course, it is true, that the whole body of stockholders were not victims, because only a few subscribed to the shares. * * * It is certainly better, even though the fraud go unrescinded, that the money should be in the corporate treasury, where it will at least feed the shares foisted on the victims, than that it should remain with the defendant. It would be an absurd paradox, which, in the name of equity, should deprive the victims of such relief as a decree would give them, on the theory that they belonged to a group which was represented by agents, faithless to themselves."

Valuable as are the great maxims of equity, they must not be applied so as to forsake substance for form.

In the Primeau Case, the court left two wrongdoers where they were, although Stewart v. Wright, 147 Fed. 321, 77 C. C. A. 499, is an illustration of the efforts of courts to find just solution in each case upon its own facts. Here, however, the wrong has been done only in form to the corporate plaintiff. The real sufferers are the innocent stockholders, and equity will break down artificial barriers so as to award relief to them.

Indeed, where the wrong goes beyond the parties themselves, and particularly where the plaintiff seeking recovery is in some relation to others whereby his participation in the wrong injures them, the courts reach below the surface in the desire to protect the injured. Wetmore v. Porter, 92 N. Y. 76; 21 C. J., 189; Saylor v. Crooker, 97 Kan. 624, 156 Pac. 737, Ann. Cas. 1918D, 473.

There may, of course, be cases where a plaintiff corporation is in no different position from an individual plaintiff, but such is not this case.

[5] Finally, it may be observed that a decree will not be denied because, as disclosed in this record, two officers of this plaintiff participated in the transactions and, if stockholders, may incidentally benefit by the decree.

In a case involving a different type of facts but, on this point, much the same in principle with that at bar, the Supreme Court said:

"Neither is the corporate right of action defeated by the fact that the recovery will inure to the guilty as well as to the innocent. * * *" Davis v. Las Ovas Co., 227 U. S. 80, 87, 33 Sup. Ct. 197, 199 (57 L. Ed. 426).

Decree affirmed, with costs.