### BANKERS' MORTGAGE CO. v. LANE.
### No. 7940.

Court of Civil Appeals of Texas. Austin.
Feb. 28, 1934.

Rehearing Granted in Part and in Part Overruled March 21, 1934.

Oltorf & Oltorf, of Marlin, for plaintiff in error.

Callaway & Callaway, of Brownwood, for defendant in error.

BAUGH, Justice.

The parties will be designated as appellant and appellee. This is a companion case to that of Bankers' Mortgage Company v. Baxter (Tex. Civ. App.) 66 S.W.(2d) 408, involving an identical bond. Appellee sued appellant for damages, both actual and exemplary, predicated upon fraud of appellant's agents in inducing her to purchase such bond. The case was submitted to a jury upon special issues all of which were found in favor of appellee and judgment rendered in her favor for $1,500 actual and $750 exemplary damages, from which judgment this writ of error is prosecuted. In so far as the fraud alleged is concerned, the issues are the same as those presented in the Baxter Case, supra, and we deem a further discussion of the question of actual damages herein unnecessary.

In the instant· case, however, the issue of negligence of Mrs. Lane in not reading the application or the bond· for a period of some nine months after she received; it was not submitted to the jury; but no complaint is made as to that. That would appear to be referable to a question of diligence in not discovering the fraud sooner, rather than to a waiver or estoppel to set up the fraud claimed in the sale to her of the bond in question. There were submitted to the jury in the instant case at the request of appellee, the following special issues, upon which the recovery of exemplary damages is predicated:

"1. Were the terms and conditions of the bond which was delivered; by the defendant, Bankers Mortgage Company, to plaintiff, so unreasonable and oppressive toward the purchaser that the officers and directors of said defendant company might reasonably expect that said bond could not be sold by their agents without resorting to false and fraudulent representations?"

"2. Did the President and directors of the defendant Bankers Mortgage Company, know or have good reason to believe that the money and property obtained from the plaintiff herein, were obtained from her by their said agents, through false representations as to the terms and conditions of said bond?"

Both of these questions were answered in the affirmative.

We find no evidence to sustain such findings other than the terms and conditions of the bond itself, which appellee contends are sufficient for that purpose. Appellee relies in large measure, if not entirely, upon the testimony of J. F. Kell, sales manager of appel-

lant, relative to the terms of said bond, as follows:

"It is true, is it not, that under the express provisions of the so-called bonds delivered to Mrs. Myrtle Lane and Mrs. Lola Baxter by your company, that if, in addition to the initial payment of $1,350.00 there had been paid the equivalent of seventeen monthly payments of $75.00 each or $1,275.00 more, making a total cash paid to the Bankers Mortgage Company of $2,625.00 on the bond, and the holder of said bond had become unable to pay any further payments thereon, then in that event there is no possible way provided under said bond whereby the holder could recover a single cent from the said company, and the $2,625.00 so paid in would be a total loss to the bondholder and a free gift to said Company? If you say that this is not true, then specify and quote the clause in said bond that would permit them to recover even one penny under such state of facts."

"A. Yes. This is correct as stated in the question."

The bond in question was for $20,000, provided for an initial payment by the purchaser of $67.50 per thousand and thereafter 162 monthly payments of $3.75 per thousand to mature it. It had no paid-up value, loan, nor cash surrender value until 18 monthly payments, in addition to the initial payment, most of which went as commission to the agent, had been made. It also provided that a default in the installment payments for a period of 2 years before such bond had attained a paid-up value, would work a forfeiture of the amounts paid in. That is, that if payments ceased before the expiration of the first 18 months after issuance, and such default continued for more than 2 years thereafter, a forfeiture resulted. But that the purchaser, even after such 2-year default, upon application and payment of a reissuance charge of $1, had the right to have issued to her a new installment bond of the kind and rate then being issued by the company, and to have credited on the new bond all sums paid by her on the old bond.

While, as stated in the Baxter Case, the forfeiture provisions of this bond may seem rather onerous, the bond is clearly a legal, valid, and binding obligation. It is pertinent to observe also that the Thrift Certificate bond held by appellee, issued to her by another company, on which she had paid $480, and which she assigned to appellant in payment to that extent of her initial payment on the bond here involved, contained like forfeiture provisions and had no loan nor cash surrender value un-

til installment payments had been made for 3 years after its issuance.

After a careful review of the record, we find no evidence upon which to sustain a recovery of exemplary damages. The evidence in this case is almost identical with that in the Baxter Case, the same depositions of Kell, and identical bonds, except as to dates, being offered in evidence in each case. There is no evidence that appellant had previously authorized or subsequently approved or acquiesced in the fraudulent representations of its agents as to the terms of said bond. On the contrary, the application blanks used by its agents, one of which was signed by appellee and a copy retained by her, and the bond itself expressly provided that any statement made by a salesman at variance with the bond should not be binding on the company. The witness Kell also testified that appellant's agents had no authority other than that prescribed.

The findings of the jury, therefore, on the questions above set out, are, we think, wholly without any evidence to support them, unless sustainable upon reasonable deductions from the express provisions of the bond itself. This bond, as the evidence showed, had been examined and approved by the bank commissioner of the state of Kansas; and many million dollars in face value thereof sold in that state; that appellant, under its permit to do business in Texas, was authorized to sell same, and had sold some $3,000,000 worth in this state. To sustain appellee's contention, and the findings of the jury on which exemplary damages are predicated, would necessarily be to find appellant guilty of a fraudulent intent in the sale of such bond to the public. Such deduction from the mere terms of the bond alone cannot legitimately be drawn. To so hold would be to say in effect that the bond on its face discloses a fraudulent purpose on the part of the appellant in offering it for sale. To hold that a legally valid, binding, and enforceable contract, duly approved by the officer of the state charged with that duty, and the sale of which to the public has been authorized by such state, by its very terms contemplates the perpetration of a fraud in such sale would create nothing short of a paradox. A contract, legal on its face, cannot reasonably import illegality (fraud) in the mere fact of its consummation. Under these circumstances, as disclosed by the record, the recovery of exemplary damages cannot be sustained.

If appellee files in this court a remittitur of the $750 exemplary damages within 15 days

from this date, the judgment of the trial court will be accordingly reformed and affirmed. Otherwise, the judgment will be reversed and the cause remanded.

If remittitur is filed, judgment will be reformed and affirmed; otherwise judgment reversed and remanded.

### On Motion for Rehearing.

On motion for rehearing defendant in error urgently insists that we are in error as to our conclusion on the issue of exemplary damages; but show that the case in that respect was as fully developed as could be done upon another trial. Instead of requiring a remittitur, therefore, as to the exemplary damages awarded, in lieu of a reversal we have concluded that the portion of the judgment awarding defendant in error actual damages should be affirmed; but as to the portion awarding exemplary damages, the judgment of the trial court should be reversed and judgment here rendered in favor of plaintiff in error and it is so ordered. The motion is to this extent granted; but in all other respects it is overruled.

Granted in part and in part overruled.