## UNION DEPOSIT CO. v. MOSELEY.
### No. 7991.

Court of Civil Appeals of Texas. Austin.
Oct. 3, 1934.

Rehearing Denied Oct. 24, 1934.

McCartney & McCartney, of Brownwood, for appellant.

Critz & Woodward, of Coleman, and Callaway & Callaway, of Brownwood, for appellee.

BLAIR, Justice.

Appellee, Mrs. Alice T. Moseley, sued appellant, Union Deposit Company, to cancel its investment bond issued to appellee, and to recover $480 paid on the bond, with interest thereon, as actual damages, and $2,000 as exemplary damages, alleged to have resulted from the fraud practiced upon her by appellant's agents and officers, which induced her to purchase and pay the $480 on the bond. A jury trial on special issues resulted in judgment in favor of appellee for $552 as actual damages, and $800 as exemplary damages; hence this appeal, in which appellant first contends that there was not sufficient legally admitted evidence to sustain the judgment.

Appellee alleged and testified in substance that in January, 1928, certain agents of appellant called upon and represented to her that any money paid by her on a $5,000 cumulative investment bond would bear 7½ per cent. interest, compounded annually; that she could withdraw any money she paid in at any time, and that she would not have to make any payment for one year after making her first payment; that if she paid $210 per year for fifteen years she would have coming to her the sum of $5,000. That she paid the agents $420, being $210 for two years. That she relied upon the statements thus made by appellant's agents, and would not have paid the $420 but for such representations. That when the bond came she looked at it, saw that it was from appellant company, and placed it in her document box in the bank, without reading it, relying upon the statements of the agents that it contained the conditions and provisions represented by them; that she later discovered that the bond did not contain any such provisions. That about one year afterwards she received notice from appellant, calling for further payment on the bond, and in reply wrote that she did not understand that she had to make such payment. That thereafter, in April, 1930, E. M. Durell, another agent of appellant, called upon her and told her that if she would transfer her investment into another character of bond issued by appellant, and by paying $60 additional and surrendering her old bond, she could withdraw the money she had thus paid in at any time with 7½ per cent. interest compounded; and, in addition, that if she left the $480 so paid in for 12½ years, she would get back $1,314.40; and that Durell later confirmed these statements by letter. That she took Durell's letter to the head office of appellant in Denver, Colo., in September, 1930, and S. W. Clark, its vice president, and E. G. Bandy, its state manager, confirmed the statements contained in Durell's letter. That upon returning home she mailed appellant her first bond, and received in a few days the one sought to be canceled by this suit. That she saw the bond was from appellant and placed it in her bank box, without reading it, relying upon the representations of the agent and officers of appellant that it contained the conditions and provisions above mentioned. That she later, in September, 1931, discovered that all of such statements and representations were falsely, fraudulently, and knowingly made by said agents and officers for the purpose of willfully, maliciously, and fraudulently obtain-

ing the $420 and the $60 payments; that she relied upon them and would not have paid out her money but for them; and that she did not discover that they were false and untrue until September, 1931; and filed this suit on October 8, 1931.

The evidence offered by appellant was a denial of all the essentials of appellee's testimony with regard to fraud.

The application for the first bond provided that appellee pay $420 upon signing same, and to make further payments, according to the conditions therein; and both the application and bond recited that any representations of the agent at variance with the bond should not bind appellant. The application for the second bond and the bond contained the agreement of appellee to pay $800 per unit for five units of the investment trust bond, and that $96 should be applied on each unit to purchase the participating certificate, and the balance of $704 should be applied to the purchase of the bond; and the bond further recited that $480 had been paid in cash, and that the balance of $3,520 should be paid in equal monthly installments of $26.67; and both the application and bond recited that any statement of any agent at variance with the bond would not be binding on appellant.

■ It is the contention of appellant that since the oral testimony of appellee was at variance with these written instruments, and since the court erred in admitting such oral testimony over objection, there remained no legal evidence to support the judgment. The rule is settled that one entitled to avoid a written contract by parol proof of fraud of the agent inducing its execution is not bound by a stipulation in the contract that no representation or promise made by the agent and not embodied in the contract will be binding upon the principal. While the rule prohibits the admission of parol evidence to change or vary the terms of a valid written contract, it does not operate to prevent its admission to show fraud inducing its execution. Southern Surety Co. v. Adams, 119 Tex. 489, 34 S.W.(2d) 789; Edward Thompson Co. v. Sawyers, 111 Tex. 374, 234 S. W. 873; Reed v. Hester (Tex. Com. App.) 44 S.W.(2d) 1107; Russell v. Industrial Transp. Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1; 20 Tex. Jur. 115, §§ 77, 79, 80 and 83, and cases there cited. This rule was applied in the following cases which involve similar applications and bonds to the ones in suit and similar transactions, and which hold that the provisions, in the application for such a bond, that salesman's statements at variance with bond should not be binding on the seller, do not preclude oral testimony regarding false representations inducing the purchase of the bond, where the purchaser is entitled to disaffirm the purchase in its entirety; Bankers' Mortg. Co. v. Rogers (Tex. Civ. App.) 61 S.W.(2d) 593; Bankers' Mortg. Co. v. Chambers (Tex. Civ. App.) 61 S.W.(2d) 597; Bankers' Mortg. Co. v. Johnson (Tex. Civ. App.) 61 S.W.(2d) 597; Bankers' Mortg. Co. v. Baxter (Tex. Civ. App.) 66 S.W.(2d) 408; Bankers' Mortg. Co. v. Lane (Tex. Civ. App.) 70 S.W.(2d) 264.

■ Appellant contends that since appellee knew she had been defrauded in the purchase of the first bond on which she paid the $420, at the time she surrendered the bond and purchased the second bond, she thereby waived and condoned such fraud and her right to recover the $420. Appellee testified that she did not know of the fraud at the time she made the second contract; but if she did, we know of no such rule of law. Manifestly appellant could not retain the money paid on the first bond after admitting that its agents had misled appellee in the purchase of the bond, and then use the money in part payment of the second bond which appellant's agents and officers fraudulently induced her to purchase. If such were the rule, then one would be permitted to relieve himself of a fraud by practicing another fraud. Clearly the second contract, under the undisputed evidence, was a complete novation and settlement of the first contract, because appellant agreed to accept the $420 paid on the first bond, and $60 additional, as the initial payment on the second bond, which is the subject-matter of this suit. The first transaction was material only as bearing upon the issue of fraud inducing the second contract, and showing the consideration for it; and the total payment of $480 will be regarded as having been paid by reason of the fraud inducing the execution of the second contract.

■ It is also apparent that since the second contract was a complete novation of the first contract, the second contract controls the question of limitation of the cause of action to cancel it, and to recover damages resulting from the fraud which induced its execution. The contract was agreed to in September, 1930, and the bond delivered shortly thereafter. This suit was filed October 8, 1931, less than two years from the date of the contract and from the date of the fraud inducing it. Besides this, and even though it be held that the period of limitation began as to the $420 payment when the

first bond was purchased, or from the time appellee in the exercise of reasonable diligence should have discovered the fraud, then her pleadings and testimony that she did not discover the fraud until September, 1931, and the jury's findings favorable to her on that issue, conclude the issue of limitation against appellant.

■ We sustain the contention of appellant that the evidence was legally insufficient to fix its liability for exemplary damages resulting from the fraudulent acts of its officers or agents, which induced appellee to purchase the second bond. In both the Lane Case and the Baxter Case, supra, this court held that evidence similar in all respects to that adduced herein was insufficient to fix liability of the corporation for exemplary damages resulting from the fraudulent act of its agent, under the settled rule that "either the act must have been previously authorized by the principal, or subsequently ratified or approved by the principal, with full knowledge of the facts."

■ Appellee alleged and testified that Durell made the fraudulent statements to her and later confirmed them by letter; and that he was an agent of appellant engaged in selling its bonds. That she showed the letter to S. W. Clark, vice president and treasurer of appellant, E. G. Bandy, state manager of appellant, at the head office of appellant; and that they confirmed the statements of Durell. Clark testified that he was vice president and treasurer, in charge of the fiscal properties of appellant, and that in the absence of either the manager or president he succeeded to many of their duties. Clark was also a director of appellant corporation. Bandy testified that he was state sales manager for the investment bonds. The contract of both Clark and Bandy with appellant defined and limited their duties and responsibilities to the duties pertaining to their respective official connections with appellant. On cross-examination by appellee, both Clark and Bandy explained fully their respective duties, and the entire evidence conclusively showed that they were not authorized to represent appellant except as to the duties pertaining to their respective official connections, and their duties within the scope or apparent scope of their respective offices. There was no evidence showing or tending to show that either of these officers was specifically authorized to act as the alter ego, or in place of the corporation, or was placed in complete charge of its business, and clothed with full authority to represent it in respect to the

fraud alleged. The mere fact that the officer is vice president, or state manager, of sales of a corporation does not bind the corporation for exemplary damages resulting from the fraud of such officer, unless it knowingly authorized or ratified the fraud; and it is generally held that the powers of a corporation are vested in its board of directors, and that the president, vice president, secretary, treasurer, or manager have no authority to represent or bind the corporation except as such authority has been conferred by the board of directors; and that in absence of evidence showing that such an officer was authorized to act for the corporation in practicing a fraud, or that the corporation in some manner knowingly authorized or ratified the fraud, it is not liable for exemplary damages resulting from the fraud of such officer or agent. Commercial Nat. Bank v. First Nat. Bank, 97 Tex. 536, 80 S. W. 601, 104 Am. St. Rep. 879; Kansas City, M. & O. Ry. Co. v. City of Sweetwater, 104 Tex. 329, 137 S. W. 1117; Henderson Mercantile Co. v. First Nat. Bank (Dreeben v. First Nat. Bank) 100 Tex. 344, 99 S. W. 850; Toles v. Power Co., 219 Mich. 466, 189 N. W. 46; Copper King Mining Co. v. Hanson, 52 Utah, 605, 176 P. 623; Francis Oil & Refining Co. v. David A. Manville & Co. (C. C. A.) 296 F. 349; In re Paoli Lithia Springs Hotel Co. (C. C. A.) 5 F.(2d) 902, 904; Texas Co-op. Investment Co. v. Clark (Tex. Com. App.) 239 S. W. 198, 201; Timme v. Kopmeier, 162 Wis. 571, 156 N. W. 961, L. R. A. 1916D, 1114; Mutual Life Ins. Co. v. Hargus (Tex. Civ. App.) 99 S. W. 580, 583.

■ The remaining questions relate to alleged misconduct and improper arguments of counsel for appellee. Counsel asked a witness for appellant if he spelled his name B-a-n-d-y or B-a-n-d-i-t. The court sustained an objection to the question, instructed the jury to disregard it, and instructed counsel not to ask further questions of that character. Whereupon, counsel in effect apologized for the question and conduct, and withdrew the question. He here contends that the incident was a mere matter of levity from which no harm could have resulted. This misconduct would not authorize a reversal of the case, because under rule 62-a reasonable probability of prejudice must appear as the result of the misconduct complained of in order to require a reversal.

■ The statement of counsel to the jury that they should carefully answer each question so that one would not be contrary to another was not improper. He simply in-

sisted that "it is a matter of extreme importance that these questions be answered correctly," and such statements cannot be interpreted as suggesting to the jury to harmonize their answers so as to render a general verdict for appellee.

The reference by counsel to the fact that appellant was a corporation and appellee a widow was clearly invited by counsel for appellant, who examined each juror on his voir dire as to whether the fact that appellant was a corporation and appellee a pretty widow would influence their verdict; and who in his argument to the jury insisted that the jury come up to the "lick log," and not render a verdict merely because appellant was a corporation and appellee a widow. Counsel for appellee merely replied in substance that it would not be proper to render judgment because appellant was a corporation and appellee a widow, but that the evidence of fraud would justify a verdict in favor of a negro, or Mexican, or appellee.

In his closing argument, counsel for appellee made several improper arguments or statements which might be reasonably calculated to prejudice the jury; but each related to his argument on the issue of exemplary damages, and could have only influenced the jury to have improperly allowed exemplary damages, or an excessive amount of such damages. Since we are reversing the judgment for exemplary damages, no good purpose can be served by a detailed statement of such arguments. They need not occur on another trial, if there be another trial.

In view of our above conclusions, we think the disposition of the case should be ruled by the procedure followed by this court in Bankers' Mortgage Co. v. Lane, supra (writ of error refused), wherein we suggested that if appellee would file a remittitur of the exemplary damages within fifteen days, the judgment of the trial court should be reformed and affirmed so as to allow judgment for the actual damages recovered. So, in this case, if the remittitur is filed, judgment will be reformed and affirmed; otherwise, the judgment will be reversed and remanded.

Judgment reformed and affirmed, if remittitur filed; otherwise, reversed and remanded.

On Filing of Remittitur and on Motion for Rehearing.

In accordance with the suggestion made in our original opinion, appellee has filed a remittitur of the exemplary damages and interest thereon awarded by one portion of the judgment. Accordingly, the portion of the judgment awarding appellee exemplary damages is reversed, and judgment is here rendered in favor of appellant, denying appellee's claim for exemplary damages; but the portion of the judgment awarding appellee actual damages against appellant is hereby affirmed.

Appellant's motion for a rehearing is overruled.

Overruled.