BENTON R. ALLEN *v.* ALLIANCE TRUST COMPANY ET AL.

DEED OF TRUST. *Substituted Trustee. Appointment. Attorney in fact.*
   The attorney in fact of the beneficiary of a deed of trust cannot appoint a substituted trustee where the deed provides for the appointment "by the beneficiary or any holder of the notes secured or their legal representatives."

FROM the chancery court of Washington county.

HON. CAREY C. MOODY, Chancellor.

Allen, appellant, was complainant in the court below; the Alliance Trust Company and others, appellees, were defendants there. From a decree sustaining defendants' demurrer to a part of the bill, the complainant appealed to the supreme court.

In 1891 Joseph Wilczinski owned a plantation in Washington county, Miss. He borrowed some money from the Alliance

Trust Company, a corporation, and to secure the loan he and his wife executed a deed of trust in the usual form upon the plantation, in which one Currier was made the trustee. The deed of trust conferred upon the trustee the power to advertise and sell the plantation in case default was made in the payment of the borrowed money, and also conferred the power to substitute a trustee in the form which is fully set out in the opinion of the court. In August, 1897, Currier died, and at his death H. C. Williamson was appointed trustee in his place by one Caldwell, attorney in fact of the Alliance Trust Company. Williamson advertised and sold the plantation under the deed of trust, and it was purchased by James Hagget and William Mc-Master for the benefit of the Alliance Trust Company, and by mesne conveyances the title thus acquired by them became vested in appellant, Allen. Joseph Wilczinski, the grantor in the deed of trust, died before the sale, and left a last will and testament, whereby he devised the plantation to his three sons. This suit was by Allen against the devisees of Joseph Wilczinski to cancel their claims to the land as a cloud upon his title, alleging that the Wilczinski devisees were claiming that the sale under said deed of trust by the substituted trustee, at which complainant purchased the lands, was void. The prayer of the bill was, first, to cancel the titles of the Wilczinski devisees, and to confirm appellant's title, or, failing in that, second, to be subrogated to the rights of the Alliance Trust Company, and to charge said plantation with the amount due and unpaid upon the debt secured by the deed of trust. The defendants demurred to so much of the bill as sought to cancel their title and to confirm complainant's title, and by leave of the court answered the other parts of the bill. The grounds of the demurrer are that the appointment of the substituted trustee by Caldwell as attorney in fact of the Alliance Trust Company was void as being an unauthorized delegation of power conferred by the deed of trust, and consequently that the sale by the substituted trustee was void; that the power conferred by

the deed of trust upon the Alliance Trust Company, to substitute a trustee in place of the one named, was revoked by the death of Wilczinski, the grantor in the deed, and that the sale was for that reason void.

*Jayne & Watson,* for appellant.

While the maxim *delegatus non potest delegare* is a well-recognized principle of the law, it gives way to circumstances and conditions which render the delegation of the power necessary. The facts and conditions in the case at bar are such as to cause this maxim of the law to give place to necessity. The mortgagor lived in the state of Mississippi, where the property involved in this suit was situated; the trustee lived in the city of Memphis, in the state of Tennessee; and the mortgagee lived in Edinburgh, Scotland, being a corporation with its domicile in that city, and was engaged in lending money on properties situated in remote parts of the earth. From the power of attorney given by this corporation to Caldwell, it will be seen that the mortgage company was doing business in many states and territories of the United States. Being a corporation it could not, in the nature of things, go to and from the different states and territories in which it did business, and consequently must have acted through its agents and attorneys in fact. Our position ought to be maintained, notwithstanding the usual rule to the effect that a power cannot be delegated by the donee thereof. Sugden on Powers, 213; 4 Cruise's Digest, 225; Perry on Trusts, 294, 511.

It is well settled both in England and America that where the donor of the power authorizes the donee thereof in the instrument of appointment to re-delegate the power, such a re-delegation of the power is good. 2 Jones, Mortgage, sec. 1778; 4 Cruise's Digest, 226, 227; *Clarke* v. *Wilson,* 53 Miss., 119.

The power vested in the donee in the case at bar authorized the *cestui que trust,* "or any holder of said note or notes, or

their legal representatives," to appoint a trustee in the place and stead of the trustee named in the conveyance.

The American courts, among them our own supreme court, at a very early date placed a liberal construction on the meaning to be given to the term "legal representatives." Say the court in the case of *Cushing* v. *Gibson:*

"The word legal representatives may be considered a generic description, of which we may have many species, such as heirs, aliens, executors, and administrators, administrators *de bonus* and administrators with the will annexed." *Cushing* v. *Gibson,* Walker, 89.

In the case of *Grand Gulf, Etc., Co.* v. *Bryan,* the court held in defining the meaning of the term "legal representatives:"

"In legal parlance the executor or administrator is most commonly called the legal representative. Still, in regard to things real, the heir is also the legal representative, and so is a devisee who takes by purchase. Heirs may be legal representatives or they may not. Suppose by will a testator should give his land to one who is not an heir; the devisee would be the legal representative, in regard to the thing devised." *Grand Gulf R. R. & Banking Company et al.* v. *Bryan,* 8 Smed. & M., 275.

In *Duncan* v. *Walker,* 2 Dallas, 205, "legal representatives" were held to mean heirs or alienees. It is well settled that the primary and original meaning of the terms "legal representatives," "legal and personal representatives," and "personal representatives" and like expressions, is administrators and executors; "but the terms 'legal representatives,' 'personal representatives,' etc., are often used in statutes and instruments of writing in a broader sense, so as to include all persons who stand in place of and represent the interest of another, either by his act or by operation of law." 18 Am. & Eng. Ency. Law [2d ed.], 814; *Mutual Life Insurance Co.* v. *Armstrong,* 117 U. S., 591; *N. Y. Life Insurance Co.* v. *Flack,* 3 Md., 341; *Plummer* v. *Brown,* 64 Cal., 429; *In re Conrad Estate,* 89

Iowa, 396; *Walter* v. *Odd Fellows Mutual Benefit Society,* 42 Minn., 204; *Ewing* v. *Shanahan,* 113 Mo., 194 (20 South-western Rep., 1065); *Woodruff* v. *Woodruff,* 44 N. J. Eq., 349 (16 Atl., 44); *Bradley* v. *Dells Lumber Co.,* 105 Wis., 246 (81 N. W., 395); *Carpenter* v. *Rannels,* 19 Wall., 138; *Chapman* v. *Nelson,* 31 La., 343; *Beall* v. *Elder,* 34 La., 1099; *May* v. *Greenwich Co.,* 15 Q. B. D., 59; *Hogan* v. *Page,* 2 Wall. (U. S.), 605; *Hammond* v. *Mason & Hamlin Organ Co.,* 92 U. S., 724; *Henderson National Bank* v. *Alvez,* 91 Kv., 142 (15 S. W., 132); *Osborne* v. *First National Bank of Athens,* 175 Pa., 494 (34 Atlantic, 858); *Railway Co.* v. *Fitler,* 60 Pa., 124; *Boston Marine Insurance Co.* v. *Scales,* 101 Tenn., 629 (89 S. W., 743); *Metzger* v. *Manchester Ins Co.,* 102 Mich., 334 (63 N. W., 650).

There is a necessity for trusting persons who cannot be personally known, in order to effectuate men's intentions in the exercise of that dominion which the law gives them over their properties. 1 Sugden on Powers, 148; *Walter* v. *Maund,* 19 Ves. Jun., 323; 1 Sugden on Powers, 151.

*Harris & Powell,* and *Edward Mayes,* on same side.

We recognize as a general rule the doctrine of *delegatus non potest delegare,* and we are familiar of course with the decision by this court of *Hartley* v. *O'Brien,* 70 Miss., 825, and the cases there cited. Still, we insist that under the facts of this case and the wording of the trust deed in question that the substituted trustee was legally appointed and his acts binding on all parties.

The controlling idea running through all the cases seemingly adverse to our view seems to be that the power to appoint a substituted trustee is a personal trust, and cannot for that reason be delegated. We submit that while this may be true where the donee of the power is a natural person, it has no application where the donee of the power is a corporation. One may repose confidence in the skill or honesty or capacity

of a natural person, but how can such trust and confidence be reposed in a corporation, which is simply a name and which can act alone through agents, who are constantly changing by death, resignation, or election? If you should say that personal trust and confidence was reposed in the president or directors of the corporation, then in which president or which directors? Holy writ tells us "that man that is born of woman is of few days," and in the seven years that the contract had to run, a part or all of them may or probably would die, be superseded or resign; in fact, Wilczinski did die during that time.

Again, under the provisions of the trust deed in question, the beneficiary or the holder of the notes or their legal representative has power to appoint a substituted trustee. If we understand the law, all the words of an instrument must be upheld and given a meaning, if possible. Under our decisions the legal representative is primarily the executor or administrator, but that sense cannot be applied to the words "legal representative" in this case, for a corporation cannot have an executor or administrator.

This court in the case of *Cushing* v. *Gibson,* Walker's Report, 89, says: "The words 'legal representative' may be considered a generic description out of which we may have many species, such as heirs, aliens, executors, administrators, etc. In the case of *Grand Gulf R. R. Co.* v. *Bryan,* 8 Smed. & M., 276, this court says that the words 'legal representative' mean assignee and grantees, and Justice Sharkey repudiates the idea that it means simply executor or administrator. In 21 Am. & Eng. Ency. Law [1st ed.], we find the following definition of legal representative: 'One who legally or lawfully represents another in any matter or thing of whatsoever nature or character.' "

The attorney in fact, who appointed the substituted trustee, was the legal representative therein mentioned, and that his appoinment was fully covered by the powers granted in the

trust deed. The words "legal representative" cannot be applied alone to the subsequent holder of the notes, who may be a corporation and probably would be, as the finances of the world today are controlled by corporations. And then, too, the plural "their" is used and must refer to the Alliance Trust Company and the subsequent holder of the notes.

*Percy & Campbell,* for appellees.

It is well settled that the execution of powers is *strictissimi juris,* and that a power to appoint a substituted trustee, conferred upon a beneficiary in a deed of trust, is a personal confidence reposed in him, which cannot be delegated. *Clark* v. *Wilson,* 53 Miss., 119; *Bonner* v. *Lessley,* 61 Miss., 392; *Porter & Macrae* v. *West,* 64 Miss., 548; *Hartley* v. *O Brien,* 70 Miss., 825; *Sharpley* v. *Plant,* 79 Miss., 175.

In *Porter & Macrae* v. *West,* and *Hartley* v. *O' Brien, ubi supra,* this court held that the execution of such a power by an attorney or agent of the beneficiary was void, and, consequently, that the sale made by the trustee, so appointed, did not confer any title.

These authorities are decisive of the case at bar, unless it be that the maxium, *delegatus non potest delegare,* does not apply to a corporation. It may be argued that, as a corporation can only act through an agent, the donor, in conferring a power upon a corporation, must be held to have intended that the power should be executed by it through an agent. It may be true that, where the instrument conferring the power, or the law, as in this state, requires a writing to evidence the appointment under the power, the writing may be executed by an agent of the corporation; but the person to be appointed could be and should be selected and named by the corporation, acting through its directors or managing agents; and, in so far as the selecting and naming of the person to be appointed is conferred upon the agent, it is an unnecessary and unlawful delegation of the power.

The power in question, being a matter of personal confidence reposed in the Alliance Trust Company, implied that the selecting and naming of the substituted trustee should be made by the corporation, without any expressed requirement to that effect, and as the corporation failed to select and name the substituted trustee, but delegated the duty to an agent under a general power of attorney executed months before the deed of trust conferring the power of substitution was ever executed, the maxim, *delegatus non potest delegare,* should be applied.

Our contention is virtually supported by the case of *Lucas v. Mortgage Company,* 72 Miss., 366, to which we specially refer.

Again, it may be argued that, since the power in question was given to the Alliance Trust Company or the holder of the notes secured by the deed of trust or their "legal representatives," and since the Alliance Trust Company was a corporation, and a corporation never dies, and therefore could have no executor or administrator, the words "legal representatives" were intended to include an agent, and that therefore the power in question was properly executed by Caldwell as agent of the Alliance Trust Company under the general power of attorney which he held.   As an answer to this suggestion we say:

First—The primary meaning of the words "legal representatives" is executors or administrators, and does not include agents.   18 Am. & Eng. Ency. Law [2d ed.], 813, 816; *Railroad Co.* v. *Hunter,* 70 Miss., 471.   And that under the rule of *strictissimi juris* these words should be given their primary meaning.

Second—If the words "legal representatives" include an agent, then the power was a matter of personal confidence reposed in the agent, to be executed by him in his own name as agent, and not in the name of the Alliance Trust Company; whereas the power in question was executed by the agent in the name of the Alliance Trust Company.

Third—The power in question is conferred upon the Alliance Trust Company or holder of the notes secured, or their legal representatives; and since the Alliance Trust Company being a corporation could not die, and therefore could not have an executor or administrator, and since the holder of the notes might be a natural person who could die and have an executor or administrator, and since "legal representatives" primarily means executors or administrators, the words "legal representatives," under the rule of *strictissimi juris,* should be construed as applying only to the holder of the notes, and not as applying to the Alliance Trust Company.

Fourth—If the words "legal representatives" be applied to the Alliance Trust Company, and it be held that, as it is a corporation, and as such could not have an executor or administrator, the words "legal representatives," as used in the power, included an agent, what will be the meaning of the words "legal representatives" as applied to the holder of the notes, who might be a natural person?

If, as applied to a natural person, the words "legal representatives" should be held to mean executors or administrators, but, as applied to a corporation, the Alliance Trust Company, these words mean an agent, then we have the same words, in one and the same clause, meaning one thing so long as the corporation holds the notes secured, and meaning another thing if the corporation should transfer the notes to a natural person. Such a construction is not allowable, and the words "legal representatives" should be construed as applying only to the holder of the notes, who might be a natural person, and not as applying to the Alliance Trust Company, who, in the nature of things, could have no legal representatives according to the true meaning of those words.

Argued orally by *H. C. Watson,* and *Robert Powell,* for appellant, and by *R. B. Campbell,* for appellees.

CALHOON, J., delivered the opinion of the court.

The very able brief of learned counsel for appellant states the rule as to the meaning of the phrase "legal representatives" as we understand the best modern authorities to define it. The phrase has no hard and fast meaning. It usually means executors or administrators; but it cannot, of course, mean executors and administrators only, in whatever instrument it may appear, and with reference to all the different subject-matters treated of in the multitude of varying instruments, and no matter what the plain purpose of the maker of the instrument using the phrase may be in using it. The court construing the meaning of the phrase arising upon the face of a particular instrument having reference to a particular subject-matter must seek to find the purpose of the party using it in using it as he does. "The what and where, with whom, and when and why" of the use of a phrase in any particular case must all be considered to reach a proper conclusion as to what the phrase may mean just in that case. So the authorities clearly demonstrate that it may, in various circumstances, mean executors, administrators, heirs, legatees, assignees, and devisees, even while legatees or devisees are strangers; in short, it may mean any person or corporation taking the beneficial interest in property, real or personal. One is not usually within the definition of "legal representative," however it may be as to the phrase "personal representative," unless he represents the other in beneficial ownership.

The words of the power to be construed in this case are as follows: "In case of the refusal, neglect, or incompetency to act of said trustee, or his absence from the state or his decease, then said party of the third part (the Alliance Trust Company), or any holder of said note or notes, or their legal representatives, can, at any time they may desire, appoint a trustee in the place of the said party of the second part (the original trustee, Currier), or any succeeding trustee, whose acts done in the premises shall be of the same validity as if done by the

trustee hereinbefore named." The power to appoint a substituted trustee is vested in three classes of persons: First—In the beneficiary company, the corporation itself. Second—In any holder of the note or notes secured. Third—"Their legal representatives." There is not, on any fair construction of these words, any delegation of power to the trustee in the deed to appoint a substituted trustee in this deed of trust, nor are there any words which authorize the trustee in this instrument to delegate any personal confidence or trust or discretion in or selection of a substituted trustee to any attorney in fact or agent of the corporation. Undoubtedly, a power of this kind may be so drawn as to delegate the personal confidence or trust or discretion to appoint a substituted trustee to the first trustee. If parties choose, they can so empower the first trustee to delegate the personal confidence or trust, but the difficulty here is that no such authority is given the first trustee. Who may appoint, in the exercise of this power, the substituted trustee? The corporation itself may do so, acting in making such an appointment through its directors. The trustee in this instrument is not the corporation, nor is the attorney in fact Caldwell. Any holder of the notes may also appoint. The crucial question in the construction of the clause having the power is, who are meant by the phrase "their legal representatives?" We think they mean the legal representatives of the holders of the notes. This appears to us clearly to be so from several considerations: First—The collocation of the words indicated. Second—The use of the plural pronoun "their" so indicates. Third—And chiefly the phrase "legal representatives," as applied to the holders of the notes, would seem, in this connection, their executors or administrators, and this use of the phrase is perfectly proper as applied to natural persons, and wholly improper as applied to corporations, in this sense, since they never die and never have any legal representatives. It is well observed, too, by learned counsel for appellees, that not to so hold, but to hold that the agent or attorney in fact

of the corporation satisfies the phrase "legal representatives," would be assigning to the very same phrase in the very same sentence the meaning of executors or administrators as applied to natural persons, and of agent, in its broadest sense, as applied to corporations. Manifestly, whatever "legal representatives" meant in this sentence, it meant the same thing for the corporation and natural persons. Fourth—As we have said in the outset, any person or corporation which takes beneficially from another person or corporation may, if the particular instrument and the particular subject-matter show that plainly to be the purpose in using the phrase, satisfy the meaning of this phrase "legal representatives," and in that view the assignee of a corporation may be the legal representative in a proper case. So those appointed by statute or otherwise to wind up the business of an insolvent or dissolved corporation may be its legal representatives, but it is perfectly manifest that the agent and attorney in fact, Caldwell, in this case took no beneficial interest whatever in this property. He had no duty to perform in respect to the matter of a sale, except to make the sale, execute the conveyance, etc. The particular power which he exercised here was the power to appoint a substituted trustee, and this power could be exercised alone, under the terms of this instrument, by the corporation itself, or some assignee taking a beneficial interest in the property. We are therefore of the opinion that this case may properly be decided by a mere construction of the terms of this power; and in construing them we hold that the agent and attorney in fact, Caldwell, had no power to make this sale, and hence it was absolutely void. It is useless to refer to authorities showing that the rule of construction as to powers is *strictissimi juris.* This court has gone farther, perhaps, than any court in the Union in upholding that doctrine.

We wish to say a cautionary word. We are not to be understood as holding now that one can repose a personal confidence or trust in a corporation. The doctrine of *delectus per-*

*sonae,* which vitalizes this whole doctrine of special confidence and trust, properly enough applies to the selection of a natural person in whose integrity and confidence the donor of a power may confide, because he knows the donee to be of such honor as to specially fit him for the trust. But a corporation, conceived of as an abstract legal entity, it might be argued, is not such a donee of a power as can have trust reposed in it because of confidence in its personal honor. And it might further be said that its directors, at the time of the vesting of the power under the instrument, may be regarded as constituting, within the scope of the *delectus personae* doctrine, the personality of the corporation; yet they may be wholly changed every year or otherwise, and so, if person or personality, if that term better pleases, in whom, in this view, the confidence would have been reposed, being gone, the corporation could not exercise the power which manifestly the grantor had intended it to exercise. And it may further still be said that, when reference is had to the nature of this *delectus personae* doctrine, this doctrine of reposing confidence and trust because of known integrity, on the one hand, and, on the other, to the nature and legal constitution of a corporation, it ought to be manifest that the doctrine can have no proper application to a corporation, but that a court should always hold on this point—construing this sort of power, vested in a corporation by this sort of instrument—that the grantor did not give the power to the corporation under the influence of the *delectus personae* doctrine, but that power so to appoint was purchased by the corporation as a part of the consideration named in the instrument, to be irrevocably exercised by it. We repeat, we are not to be understood as announcing any holding on either of these propositions, because decision here only requires a proper construction of the terms in which the power has been couched. Of course the appellant must do equity if he seeks equity, and just as certainly he would be estopped to set up any statute of limitation against the enforcement of the claim, and the ap-

pellee has nothing still to do except to enforce its security in the proper way. But this sale is absolutely void, and no title passed under it; and this seems to be the only point which the court below adjudged. At all events, it is the only point which we adjudge, and on this proposition the decree is affirmed.

It will be noted that we have not cited an authority, since they are fully and discriminatingly collated by the counsel on both sides in their unusually able briefs.

*Affirmed.*