## TAYLOR v. SAN ANTONIO JOINT STOCK LAND BANK.

### No. 9814.

Court of Civil Appeals of Texas. San Antonio.

Oct. 21, 1936.

On Appellee's Motion to File Amended Transcript Nov. 14, 1936.

On Rehearing Jan. 20, 1937.

Supplemental Opinion Feb. 9, 1937.

Fagan Dickson, of San Antonio, and Ward & Brown, of Corpus Christi, for appellant.

Wm. F. Koch and John J. Cox, both of San Antonio, Boone, Henderson, Boone & Davis, of Corpus Christi, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellee.

MURRAY, Justice.

This suit was instituted in the district court of Nueces county by Kate L. Taylor, administratrix of the estate of her deceased husband, James M. Taylor, against the San Antonio Joint Stock Land Bank of San Antonio, seeking, in a trespass to try title suit, to recover the title and possession of 450.4 acres of land situated in Nueces county, Tex., and further to remove a cloud upon the title evidenced by a purported trustee's deed executed by A. P. Graves, as substitute trustee, to the San Antonio Joint Stock Land Bank, conveying the 450.4 acres of land in question to the bank.

The cause was tried before the court without the intervention of a jury, and resulted in a judgment denying any recovery to Mrs. Taylor, and awarding the land and premises in question to the San Antonio Joint Stock Land Bank.

From this judgment, as administratrix, Mrs. Taylor has appealed.

The sale of this land by A. P. Graves, as substitute trustee, to the Land Bank is attacked by the appellant, Mrs. Taylor, upon the ground that the appointment of Graves as substitute trustee was void and that therefore any such attempted sale by him was also void.

The original trustee named in the deed of trust was Wm. B. Lupe, who was also

president of the San Antonio Joint Stock Land Bank, the beneficiary named in the deed of trust.

On January 21, 1931, the board of directors of the San Antonio Joint Stock Land Bank adopted a resolution which reads in part as follows:

"Therefore be it resolved by the Board of Directors of said the San Antonio Joint Stock Land Bank of San Antonio that when the said Wm. B. Lupe, or any trustee named in any deed of trust held by said the San Antonio Joint Stock Land Bank of San Antonio securing to it the payment of any note or notes held by it which has matured, or which has been declared due and payable by said Bank, acting by and through its Executive Committee, is requested to enforce the deed of trust, and to execute the trust therein imposed, and should he or they fail or refuse to do so, there shall be and are appointed, and that the President and any of the Vice-presidents of said The San Antonio Joint Stock Land Bank of San Antonio, be and they are hereby authorized to appoint, with the attestation of its Secretary under its corporate seal, as Substitute Trustee or Trustees, the following:

"S. P. Smith of Dallas, Dallas County, Texas; A. P. Graves, L. H. Hopkins, J. M. Reed and Wm. F. Koch of San Antonio, Bexar County, Texas; and Elmer F. Sanson of Plainview, Hale County, Texas, any one of whom, when so appointed, shall succeed to all of the rights and powers of the trustee named in said deed of trust.

"Be it further resolved that the Executive Committee of said the San Antonio Joint Stock Land Bank of San Antonio is hereby authorized to mature and declare due and payable any and all notes held by said Bank which are now or may hereafter become delinquent, or which may be matured for failure on the part of the maker or makers to perform any condition or requirement provided for in said note or the deed of trust securing the payment thereof."

On November 5, 1932, at a meeting of the executive committee of the appellee bank, the indebtedness secured by the deed of trust theretofore given by James M. Taylor and others to said bank was declared due under the acceleration clause contained therein, for the failure to pay installments when due, and a foreclosure by the trustee was ordered. The trustee, Wm. B. Lupe, then tendered his resignation and the executive committee of the bank ap-

pointed A. P. Graves as substitute trustee, and directed him to foreclose and sell said land under the power of sale contained in the deed of trust.

On December 5, 1932, the land was sold by A. P. Graves as substitute trustee, and on December 6, 1932, a trustee's deed was executed by Graves conveying said 450.4 acres of land to the appellee bank.

The question here presented is, Was the appointment of A. P. Graves, as substitute trustee, valid, or was such appointment void and the attempted sale by him likewise void?

The deed of trust provided, among other things, as follows:

"If the said Trustee shall die, or shall remove from the State of Texas, or shall be disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by the owner or holder of said debt so to do, said owner or holder shall have full power to appoint, without notice to us, by written instrument duly recorded in said County, a Substitute Trustee, and if necessary, several Substitute Trustees in succession, who shall succeed to all the estate, rights, powers and duties of the said Wm. B. Lupe, Trustee, and we do hereby ratify any and all acts which the said Wm. B. Lupe, Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof.

"It is stipulated and agreed by the parties hereto, that in any deed or deeds executed by the Trustee hereunder, any and all statements of fact, or other recitals therein made, as to the non-payment of the money secured, or as to the request to the trustee to enforce this Trust, or as to the proper and due appointment of any substitute Trustee, or as to the advertisement of sale, or as to the time, place and terms of sale, and the property to be sold having been duly published, or as to any other preliminary act or thing having been duly done by said Trustee, shall be taken by any and all courts of law and equity, as prima facie evidence that the said statements or recitals do state facts, and without further questioning, shall be accepted as such by us, our heirs, assigns, administrators and legal representatives."

It is clear from the above provisions of the deed of trust that, in the event the trustee named in the deed of trust should become disqualified from acting in the execution of the trust, or should fail

or refuse to execute the same when requested by the owner or holder of the note so to do, then and in that event the owner and holder would have full power to appoint a substitute trustee. The owner and holder of the note in question being the San Antonio Joint Stock Land Bank, and being a corporation, the power to appoint a substitute trustee, under such circumstances, would be vested in the board of directors of such bank. The order entered by the board of directors on January 21, 1931, long before this particular indebtedness had been declared due and long before the trustee named in the deed of trust had refused to act, naming six different persons who might be appointed by the executive committee to act as substitute trustee in the event it should become necessary to appoint substitute trustees, was not a proper exercise of this authority vested in the directors. At most it was a delegation of the authority vested in the board of directors to the so-called executive committee to appoint substitute trustees; the executive committee consisting of three men appointed by virtue of article 8 of the by-laws of the bank. Article VIII of the by-laws reads as follows:

"The Board of Directors shall appoint or elect an executive committee of three, two of whom agreeing shall constitute a quorum and may transact business. The action of the Board in the appointment or election of the executive committee shall be made a part of the record of the proceedings of the Board."

■ It appears that it was the duty of this executive committee to carry on the ordinary affairs of the corporation, but it was not authorized to act for the bank in matters other than ordinary routine business. The selection of a substitute trustee by a corporation must be done by the board of directors, who act for the corporation, and such power as was given in the deed of trust in this case to the bank could not be delegated to an executive committee, or any other agent of the corporation.

In Michael v. Crawford, 108 Tex. 352, 193 S.W. 1070, 1071, we find the following quotation, which we think is applicable here: "The selection of a substitute trustee always involves choice and discretion. It requires good faith, and the designation of only such a person as will conduct the sale with entire fairness. A power whose exercise involves discretion is not delegable. The trustee, it is to be remembered, is the agent both of the maker of the deed of trust and the cestui que trust." See, also, Holcomb v. Nettleton (Tex.Civ.App.) 35 S.W.(2d) 745; Allen v. Alliance Trust Company, 84 Miss. 319, 36 So. 285; Fuller v. O'Neil, 69 Tex. 349, 6 S.W. 181, 5 Am. St.Rep. 59.

It therefore follows that Graves, not being properly appointed substitute trustee, had no authority to execute a trust agreement and that the trustee's deed executed by him was of no effect.

■ The evidence is not sufficient to show that the trustee named in the deed of trust was not requested to execute the trust in view of the fact that the substitute trustee's deed recites that the original trustee failed and refused to act after being requested to do so. By the terms of the deed of trust, all recitals in the trustee's deed are prima facie evidence of their truth, and there is not in the record sufficient evidence to overcome this prima facie showing and establish conclusively that no request was made of the original trustee to execute the trust. Especially is this true in the light of the trial judge's finding on this matter.

■ Neither is the fact that the supposed appointment of a substitute trustee was not recorded before he began a discharge of his duties as trustee of any consequence. It was ultimately recorded, and, if such appointment had been otherwise valid, the failure to record it at once would not have rendered it invalid.

The next question presented is whether or not the administratrix of James M. Taylor's estate may sue for and recover this land without first tendering to the Land Bank the amount due on the note secured by the deed of trust amounting to some $15,000.

■ There is no question but what the bank in this case occupies the position of a mortgagee in rightful possession and cannot ordinarily be ousted from possession without a tender of the full amount due on the note secured.

■ However, an exception to this general rule exists when a dependent administratrix of a decedent's estate sues to recover land held by a mortgagee under a void foreclosure. This rule is definitely established in Jackson v. Jones, 74 Tex. 104, 11 S.W. 1061, and this decision has never been overruled, criticized, or in any way limited.

There is a good reason for this rule. First, a dependent administrator or administratrix can only pay claims that have been approved by the probate court, and in the order of their classification by the court. It is clear that it would not be proper for an administrator to tender the amount due upon a claim which had not been allowed or classified by the probate court.

It is, however, the duty of the administrator to recover the possession of all property belonging to the decedent's estate and to hold the same subject to due administration by the probate court. Kent v. Johnson. (Tex.Civ.App.) 78 S.W.(2d) 282, 283; 14 Tex.Jur. pages 336–7.

It might appear that in Dallas Joint-Stock Land Bank v. Wise (Tex.Civ.App.) 40 S.W.(2d) 931, a different rule from that laid down by the court in Jackson v. Jones was announced, but the Wise Case is easily distinguishable from the Jackson v. Jones case, in that in the Wise Case the court was dealing with an independent executor and not a dependent administratrix. In the Wise Case the executor did not sue for the recovery of the land, but was a defendant in an action brought by a creditor of the first class. Again, in the Wise Case, at the time the suit was filed, the bank had already foreclosed its deed of trust by holding a trustee's sale, which it was entitled to do, at any time during the independent administration, and therefore the bank had legal title at the time as an owner, instead of being a mortgagee in possession. Again, the bank alleged and proved an express contract with the deceased whereby the bank was to have possession and retain all the rents thereof until a sale of the land could be effected. This was an express contract with reference to possession and was valid and enforceable as against the executor. Thus the Wise Case is not in conflict with the Jackson-Jones Case.

It is contended by the bank in this case that James M. Taylor, during his lifetime, voluntarily yielded possession of the land to the bank and that this amounted to a contract placing the bank in possession of the land.

We do not agree with this contention. The record shows that all that was done by Taylor was that, as a law-abiding citizen, he permitted the bank to take possession of the property after their supposed trustee sale, which, at that time, he believed to be a valid sale. This act on the part of James M. Taylor would not preclude his administratrix from suing for possession of the land after his death.

In Texas the legal title remains in the mortgagor and the mortgagee has merely a lien as security for his debt. Carroll v. Edmondson (Tex.Com.App.) 41 S.W.(2d) 64. The mortgagor is entitled to retain the possession until the mortgagee procures a valid foreclosure of its lien. Breeding v. Farm & Home Savings & Loan Association (Tex.Civ.App.) 90 S.W. (2d) 272. A foreclosure can be had by a judgment of the court establishing the debt and fixing the lien, in which event the land must be sold by the sheriff or a receiver, or by a valid exercise of a power of sale contained in a deed of trust.

The appellee bank asks this court, in the event they should hold the sale by the substitute trustee to be invalid and of no effect, that in that event this court give appellee judgment of foreclosure as prayed for in its cross-action.

The record shows that in the final amended answer of appellee filed in the trial court no cross-action was set forth, but only reference made to the cross-action contained in a previous pleading. This amounted to an abandonment by appellee of its cross-action, and it naturally follows that this court cannot now render judgment in favor of appellee upon a cross-action set forth in an abandoned pleading.

For the reasons above stated, the judgment of the trial court will be reversed and the cause remanded for another trial.

The opinion of this court heretofore delivered in this case on April 22, 1936, is hereby set aside and this opinion substituted as the opinion of this court.

Reversed and remanded.

BOBBITT, J., did not participate in the decision of this case.

## On Appellee's Motion to File Amended Transcript.

On November 5, 1936, appellee filed this motion for leave to file amended and corrected transcript, or in lieu thereof for certiorari to correct the transcript. The correction desired is, to have appellee's second amended answer, filed in the trial court, included in the transcript here. The transcript contains appellee's third amended answer, which refers to and adopts appellee's cross-action, as set forth in appellee's second amended answer. In other words, appellee desires to have the tran-

script show its cross-action, which was fully set out in its second amended answer, and referred to and adopted in its third amended answer.

The record in this cause was filed in this court on June 4, 1935. No motion to amend the record, or for certiorari, was filed within thirty days, as required by the Rules for the Courts of Civil Appeals, Nos. 8 and 11. However, such a motion was filed and submitted to this court on February 12, 1936, the day this cause was submitted on its merits. This motion was overruled on April 22, 1936, the day this court rendered its first opinion affirming the judgment of the trial court. No motion for a rehearing was filed by appellee, but one was filed by appellant. This motion was not passed on but was still pending when that term of the court expired by operation of law.

On October 21, 1936, at this present term of the court, this court delivered an opinion setting aside our opinion affirming the judgment, reversing the judgment of the trial court, and here rendering judgment for appellant.

On November 5, 1936, appellee again filed a motion for leave to file an amended and corrected transcript, or in lieu thereof for certiorari to correct the transcript. It is readily understood that appellee saw no need for sooner filing such motion, or for moving for a rehearing on the first motion, as appellee had received all the relief sought under our opinion of April 22, 1936. We therefore make no point on the fact that this second motion was not sooner filed, but will here pass upon appellee's rights as they existed under the first motion.

This first motion was filed on the day the cause was submitted on its merits. Thus it is clear this court had no opportunity to grant that motion until after the cause had been briefed, argued, and submitted.

Rule 22 for the Courts of Civil Appeals reads, in part, as follows: " * * * All parties will be expected, before submission, to see that the transcript of the record is properly prepared, and the mere failure to observe omissions or inaccuracies therein will not be admitted, after submission, as a reason for correcting the record or obtaining a rehearing."

In Huling v. Moore (Tex.Civ.App.) 194 S.W. 188, it was held that a motion to correct the record filed one day before submission came too late. See, also, Houston & T. C. R. Co. v. Parker, 104 Tex. 162, 165, 135 S.W. 369; General Accident, Fire & Life Assurance Corp., Ltd., v. Lacy (Tex.Civ.App.) 151 S.W. 1170; Davis v. Peurifoy (Tex.Civ.App.) 91 S.W. (2d) 1175; Wallace & Reed v. Reed Bros., 102 Tex. 314, 116 S.W. 35; Hayslip v. Pomeroy, 7 Tex.Civ.App. 629, 32 S.W. 124.

However, brushing aside the fact that the first motion was not timely filed, and considering it on the merits, we are of the opinion it should not be granted.

It is not permissible to bring forward any part of a superseded pleading by a mere reference to allegations contained therein. Rule 13, for District and County Courts, requires that an amended pleading must be entire and complete in itself, and rule 14 provides that the pleading for which the amended pleading is substituted shall no longer be regarded as a part of the pleading in the record of the cause, with certain exceptions, which do not here exist. Rule 84 provides that in making up the transcript amended pleadings shall take the place of those for which they are substituted, and the pleadings thus superseded (except such as are specified in rule 14) shall be left out of the record.

We therefore conclude that the transcript was properly prepared and the clerk properly included in the transcript appellee's third amended answer, and only complied with the rules when he left out appellee's second amended answer.

There are many decisions to the effect that allegations contained in prior pleadings cannot be brought forward by reference or adoption in amended pleadings. 3 Tex.Jur. p. 412, § 294; 29 Tex.Jur. p. 83, § 83; Bryan & Emery v. Frick-Reid Supply Co. (Tex.Civ.App.) 10 S.W. (2d) 1023; Henderson v. Oil & Ref. Co. (Tex.Civ.App.) 258 S.W. 1082; Jones v. Fink (Tex.Civ.App.) 209 S.W. 777; Home Inv. Co. v. Strange (Tex.Civ.App.) 152 S.W. 510; Black v. Black (Tex.Civ.App.) 2 S.W.(2d) 331. Such substituted pleadings cannot be considered, though improperly in the record. Bryan & Emery v. Frick-Reid Supply Co., supra. See, also, 33 Tex.Jur. p. 514, § 83; Townes Tex. Pleading p. 290; Shannon v. Hay (Tex. Civ.App.) 153 S.W. 360; Smith v. Tipps (Tex.Civ.App.) 171 S.W. 816, 817 (cross-action involved); City of Aransas Pass v. Usher (Tex.Civ.App.) 191 S.W. 157; Cook v. Williams (Tex.Civ.App.) 32 S.W.

(2d) 244; Starnes v. Tel. Co. (Tex.Civ. App.) 27 S.W.(2d) 561.

Accordingly, appellee's motion to amend record will be in all things overruled.

### On Motion for Rehearing.

Appellee, the San Antonio Joint Stock Land Bank of San Antonio, complains in its motion for a rehearing of our statement to the effect that A. P. Graves was appointed substitute trustee by the executive committee of the bank. This statement was based upon the following testimony given by J. M. Reed, secretary-treasurer of appellee bank, to wit:

"Q. Referring again to the minutes of the Executive Committee, is there anything else contained there with reference to the loan to Mr. and Mrs. Taylor and Mrs. Ridley? A. It shows that A. P. Graves was appointed Substitute Trustee to make the sale.

"Q. On what date was that appointment made? A. November 5, 1932."

It is true, however, that the record does justify a finding that Wm. B. Lupe, acting as president of appellee bank, made the appointment of A. P. Graves as substitute trustee, and we will accordingly accept appellee's contention and now discuss the case from the standpoint that the substitute trustee was appointed by Wm. B. Lupe, as the president of the bank.

The deed of trust provides that the holder of the note may, under certain circumstances, appoint a substitute trustee without notice to the mortgagor. The holder in the instant case was the San Antonio Joint Stock Land Bank of San Antonio. The question presented is: "Under this provision in the deed of trust, can the president exercise the discretion of appointing a substitute trustee, or must that discretion be exercised by the board of directors?"

The president of a bank or any other corporation has very little power by virtue of his office. Dallas Joint Stock Land Bank of Dallas, Texas v. Colbert (Tex.Civ.App.) 98 S.W.(2d) 239. The board of directors may delegate to him the exercise of many powers, provided such powers may properly be delegated. It is definitely settled that the power to appoint a substitute trustee must be made by the person or board stated in the deed of trust, and cannot be delegated to any one else. Michael v. Crawford, 108 Tex. 352, 193 S.W. 1070; Holcomb v. Nettleton (Tex.

Civ.App.) 35 S.W.(2d) 745; Rhoton v. Texas Land & Mortgage Co. (Tex.Civ. App.) 80 S.W.(2d) 763.

The president or vice president of a corporation, with few exceptions (which are not involved in this case), exercises only such powers as are delegated to him by the board of directors. By virtue of his office alone he cannot convey the land of the corporation; there must be authority from the board of directors. Corporations have on many occasions escaped liability on this theory. Dallas Joint Stock Land Bank v. Colbert, supra; Logue v. Southern Kansas R. Co., 106 Tex. 445, 167 S.W. 805; Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S.W. 1078; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627; Commercial National Bank of Beeville v. First Nat. Bank of Cuero, 97 Tex. 536, 80 S.W. 601, 104 Am.St.Rep. 879.

It occurs to us that a solution of the question under consideration is readily disposed of by a consideration of how corporations ordinarily act. The board of directors is the official body of the corporation, and when we speak of acts of the corporation we mean acts of the legally constituted board of directors, either done by the board itself, or some person duly authorized to act for it. There is no other alter ego of the corporation except the board of directors, or some officer or agent duly authorized by such board.

We have not been cited to a single authority in this or any other jurisdiction where it has been held that the president or vice president of a corporation can, by virtue of his office, appoint a substitute trustee where the deed of trust provides that the corporation itself is authorized to make the appointment. On the other hand, we have been cited to several authorities which we construe as being to the contrary, to wit: Allen v. Alliance Trust Co., Limited, 84 Miss. 319, 36 So. 285; Haggart v. Wilczinski (C.C.A.) 143 F. 22; Williams v. Connor Bros. (Tex.Civ.App.) 83 S.W. (2d) 692; Scottish American Mortgage Company v. Butler, 99 Miss. 56, 54 So. 666, Ann.Cas. 1913C, 1236.

In the very recent decision of the Dallas Joint Stock Land Bank of Dallas, Texas, v. Colbert (Tex.Civ.App.) 98 S.W.(2d) 239, the contention of the land bank was upheld, to the effect that the vice president of the land bank could not, without authority from the board of directors. make a contract with a broker or real estate

agent to sell certain lands belonging to the bank. If the president or vice president of a land bank does not have the power, by virtue of his office to enter into a listing contract with a real estate agent, how can it be contended that he has the power to appoint a substitute trustee where the deed of trust provides, in effect, that the appointment must be made by the bank? It is true that the Supreme Court has granted a writ in that cause, but upon the ground that the bank, having knowingly accepted the benefits of the contract, could not avoid liability under the contract. See Texas Syllabi, Jan. 6, 1937, page 3.

We are cited by appellee to the case of Rhoton v. Texas Land & Mortgage Co. (Tex.Civ.App.) 80 S.W.(2d) 763, 769. In that case the deed of trust contained the following provision, to wit: "And should the said A. G. Wood, Trustee, be absent from the State, or fail or refuse, or be disqualified from acting hereunder, the legal holder or holders of said notes, or the General Manager, or Acting General Manager of aforesaid Mortgage Company shall have full power to appoint a substitute, in writing, without notice to us, who shall have the same powers which are hereby delegated to the said A. G. Wood, Trustee, and we do hereby absolutely ratify and confirm any and all acts that the said Trustee, or his successor in this trust, may lawfully do in the premises by virtue hereof."

It is clear from this provision that the deed of trust authorized the general manager of the corporation to make the appointment of a substitute trustee. James C. Macdonald, general manager of the Texas Land and Mortgage Company, did make the appointment, and thus the provision of the deed of trust was carried into effect, and the person authorized to make the appointment did in fact do so.

This provision in the deed of trust clearly distinguishes that case from the case at bar. No such provision is found in the deed of trust in the Taylor Case.

We wish to further quote from the opinion in the Rhoton Case. The court said: "The trial court found that on March 10, 1932, James C. Macdonald was general manager of the Mortgage Company, and that W. James Mitchell was appointed substitute trustee according to the terms of the deed of trust. A person authorized under a deed of trust to appoint a substitute trustee cannot delegate his power to make such appointment. Michael v. Craw-

ford, 108 Tex. 352, 193 S.W. 1070; Holcomb v. Nettleton (Tex.Civ.App.) 35 S. W.(2d) 745. The reason for the rule is that the mortgagor has conferred a discretionary power upon a person whom he is willing to trust to execute it, and that, it being a power involving discretion, it cannot be delegated to another, since the one to whom it is delegated might not be acceptable to the mortgagor."

■ We feel that this is a correct statement of the law and entirely upholds our conclusion to the effect that the president of the bank could not appoint a substitute trustee when the deed of trust provided that such substitute was to be appointed by the bank. Of course, the president and secretary could execute the written appointment, if the board of directors had exercised the discretion of choosing and designating who the substitute trustee should be. But an act of the directors performed before the trustee had declined to act, merely giving a list of persons from which a substitute trustee might be selected by the president or vice president, is not a discharge of the discretionary power placed upon them by the terms of the deed of trust.

■ We now come to the consideration of whether or not Mrs. Taylor, as administratrix, can recover the land without tendering the amount due by the terms of the note secured by the deed of trust. We wish to here acknowledge our mistake in our original opinion wherein we cited Alexander v. Berkman (Tex.Civ.App.) 3 S. W.(2d) 864, as holding that an independent executor was not required to pay claims against the estate in the order prescribed by statute. The decision is to the contrary and does not support our statement. There are, however, other decisions which do so hold. Ewing v. Schultz (Tex.Civ. App.) 220 S.W. 625; 13 Tex.Jur. 774. Independent of this proposition, we are of the opinion that we have correctly held that the administratrix did not, and under the law could not, tender the amount due as a prerequisite to her right to recover the land. We also feel that we were wrong in holding that the bank was in rightful possession of the land. The foreclosure being void, the bank's possession was unlawful and not lawful. Fuller v. O'Neil, 69 Tex. 346, 6 S.W. 181, 5 Am.St. Rep. 59. We have further examined all the correspondence between representatives of the bank and James Taylor, and do not

find anything that would indicate that Taylor agreed for the bank to take possession, but, on the contrary, find that all propositions made by Taylor were not accepted but rejected. The letters from the representatives of the bank make it plain that the bank intended to make no agreements with Taylor, but intended to take possession of the land by virtue of its substitute trustee's deed.

We do not conclude, however, that the sale was void in the sense that Mrs. Taylor, as administratrix, can recover the land and deprive the bank of its debt and security. We feel that the correct rule is laid down in Haggart v. Wilczinski, supra, and that equity will require that the administratrix be permitted to recover the land charged with the full amount of principal and interest provided for in the note and deed of trust.

Accordingly, our judgment heretofore rendered reversing this cause will be set aside, and judgment here rendered that Mrs. Taylor, as administratrix, recover the land herein sued for, subject to a lien to secure the full amount of the obligation expressed in the note and deed of trust, and that this judgment be certified to the probate court of Nueces county for observance, and, should the amounts due be not paid, that the land be sold by order of the probate court, and in accordance with the laws governing such sale to satisfy the amount due the appellee under the terms of the note herein involved.

Reversed and rendered.

### Supplemental Opinion.

Since the rendition of the opinion of this court on January 20, 1937, in this cause, it has come to the attention of the court that the court did not have sufficient evidence in the record to enable it to determine the exact amount due to the bank upon the notes involved here, in that there is no evidence in the record showing the reasonable rental value of the land during the time it has been in the possession of the bank, and it therefore becomes necessary for this court to set aside its judgment rendering this cause, and the cause will be remanded to the district court, with instructions to hear evidence and determine the reasonable rental value of the land during the time it has been in possession of the bank, and deduct this amount from the amount of principal and interest due on the notes, and add thereto the amount of all taxes paid out on the land by the bank. The court will then render judgment awarding the land to Mrs. Taylor, as administratrix, charged with an equitable lien for the security of the amount due the bank, as above set forth, after deducting therefrom the reasonable rental value of the land, as above stated, and, in the event the amount due the bank, as thus ascertained by the district court, be not paid by the administratrix, the probate court will be directed to sell the land as provided by law.