**BRETT** et al. v. GILES.

No. 10416.

Court of Civil Appeals of Texas. San Antonio.

April 12, 1939.

Rehearing Denied May 3, 1939.

Pace, Goens & Park, of Tyler, for appellants.

Crane & Glarner, of Raymondville, for appellee.

SMITH, Chief Justice.

From a very confused record, both of pleading and evidence, we have endeavored to eke out the salient facts of this case. The evidence from all sources, voluble as it is, is nevertheless vague, inconsistent, contradictory and unsatisfactory, and is further obscured by the absence of specific findings of fact and conclusions of law by the trial judge. This omission was not the fault of the trial judge, however, since neither party requested such findings.

It appears that the principal actors in the controversy were W. H. Giles and Ed Oliver upon one side, and Mrs. M. A. Brett upon the other. Up to the time of this litigation Giles and Oliver were associated together as land brokers. They seemed to operate on Giles' money and Oliver's efforts, upon a somewhat precarious and flexible profit-sharing agreement, whereby Giles would advance expenses incurred by Oliver in finding prospects and effecting sales to them. Out of the profits or commissions from sales Giles would be first reimbursed for his advancements to Oliver, and the two would divide the net balance derived from their operations. The relation is a familiar one. In his testimony Giles repeatedly, and apparently without objection, expressed the purely legal conclusion that this arrangement simply constituted Oliver his "agent on commission." That Mr. Giles was in obvious error in that broad conclusion of law does not seem to matter very much here, since an exact legal definition of that relationship seems immaterial to this inquiry. It is deemed sufficient to say that in his dealings with Mrs. Brett Oliver had all the apparent authority necessary to bind himself as well as Giles, whether he was the latter's alter ego, partner, joint adventurer, agent or what-not. If he was acting for Giles, as Giles insists he was, then Giles was bound by his acts done in reasonable pursuance of the venture.

It appears from the record that Oliver's headquarters were at Tyler. When he found prospects in that vicinity he would carry them to Willacy and adjoining counties and show them the lands listed with Giles and him. Raymondville is 600 miles from Tyler, where the Bretts reside. Giles resided at Harlingen, twenty miles below Raymondville.

The 240-acre tract of land in controversy is situated near Raymondville, in Willacy County. It was owned by one Stephenson, from whom Giles obtained and then renewed an option to purchase the tract at the price of $6,000 cash. He paid $500 for the original option, and $300 for the renewal, which extended it through the year 1936. For convenience Stephenson executed a deed conveying the land to one Puente, who in turn executed a deed conveying it in blank. In both deeds the consideration was recited to be $6,000, as it actually was. Giles seems to have had some sort of possession of those deeds when the transactions here involved began. In pursuance of their continuing venture, Giles and Oliver agreed between themselves that they would procure a purchaser for the land and divide the net profits equally, after payment of any advancements made by Giles.

In October, 1936, Oliver showed the land to Mrs. Brett's husband and son, who were prospecting in the Rio Grande Valley. He represented to them that the land was for sale at $8,000, and as an inducement offered to pay $2,000 of that amount if Mrs. Brett would pay the balance of $6,000, whereby he would have a one-fourth interest and she a three-fourths interest, she to take title to the whole. In case of resale he would receive one-half of the net profit and she one-half. Oliver's proposal was to put in a named bank a deed from Puente to Mrs. Brett, in escrow, together with his check for $2,000, for his share, and she would put up her check for $1,000 as earnest money and draft for $5,000 for the balance of her part of the purchase price. Oliver executed his personal check, which was worthless, and which he secretly withheld from the escrow papers and left with the notary with instructions to see that it was never presented for payment, he having no account in the bank upon which it was drawn, nor in any other bank. On the other hand, Mrs. Brett fully complied with her part of the agreement, executing her check and draft and placing them in escrow with the deed, while Oliver fraudulently withheld his check and concealed the fraud from Mrs. Brett and her representatives.

The record shows, conclusively, that neither Giles nor Oliver ever paid, or ever intended to pay, any part of the purchase price of the land, which was in fact $6,000, all of which Mrs. Brett finally paid.

A few days later Oliver, in Tyler, called upon Mrs. Brett to complete the purchase. Mrs. Brett, however, had apparently learned of Oliver's deceit, or at least that he was not paying any part of the purchase price of the land, and had falsely represented the price to be $8,000, (and that he was paying $2,000 thereof) when it was in fact only $6,000, and that he was attempting to trick her into paying the full price for only three-fourths of the property. She taxed him with the deceit, and he admitted it, saying, "you have caught me in the act," or words to that effect. She thereupon repudiated the prior agreement, and refus-

ed to proceed with the purchase on the original basis. She positively refused to pay the agreed $6,000, except for the whole property. Oliver asked for time, and, after consulting Giles by telephone, returned to Mrs. Brett, and when she still refused to pay $6,000 except for the whole property, Oliver, acquiescing in her repudiation, proposed that she take the whole acreage for $6,000, and give him the exclusive agency for reselling it at an increased price, and divide the profits equally with him. She agreed to this proposition, and the deal was finally consummated on that basis. She paid the full purchase price of $6,000, upon delivery of the deed conveying the entire interest to her, and thus the matter ended for the time being.

We have not mentioned Giles in those several transactions because he had no part in them, so far as the Bretts were concerned. They dealt exclusively with Oliver, and had no knowledge of Giles' interest until long after the transaction was closed with the passing of the deed, conveying the whole title to Mrs. Brett. About a year after that conveyance Giles procured a correction deed from Puente to Mrs. Brett, including a part of the acreage which had been inadvertently omitted from the first deed. The correction deed, like the original, conveyed the whole tract to Mrs. Brett.

■ Some time after this correction deed passed, Giles brought this suit against not only the Bretts, but against Oliver, as well. The case was tried upon Giles' second amended original petition, in which he undertakes to replead "all of his original petition," by reference only, which cannot be done. Taylor v. San Antonio Joint Stock Land Bank, Tex.Civ.App., 101 S.W. 2d 868. His cause of action is therefore limited to that stated in his second amended original petition.

This suit was in three alternative counts, first, in trespass to try title; second, for an undivided one-fourth interest in said land to be apportioned between himself (Giles) and Oliver; and, third, for the profit he and Oliver would have made had Mrs. Brett accepted the purchaser procured by him and had resold the land for $9,000, as she was obligated to do under her contract with Oliver. The second count seems to rest on a theory of express or implied trust, arising from Giles' contention that he paid a part of the purchase price, entitling him to a proportionate interest in the land, notwithstanding the conveyance of the whole to Mrs. Brett. The trial court seems to have rendered judgment upon that theory. In his trial petition Giles prayed: "Wherefore, the premises considered, he prays the court that he have judgment against the Bretts for the title in and to one-fourth of the land, and that such one-fourth be set apart to him and defendant Oliver, and that he have his costs against the Bretts, or that he have his profits out of the land after it is sold, and that he have judgment against the defendants Brett for one-half of one-fourth of the land, and that he have a foreclosure of his vendor's lien to repay to him the purchase money that he has put into defendant Oliver's one-fourth of the said land, and that he have such other relief as the court may find him entitled to receive under law and facts."

The cause was tried by the court, without a jury, and judgment was rendered in favor of plaintiff, W. H. Giles, and against W. P. Brett and Mrs. M. A. Brett, for an undivided one-fourth interest in the land, ordering a partition and appointing commissioners to partition the land.

The Bretts have appealed. Oliver got lost in the shuffle, it seems.

We conclude that the judgment cannot stand, for several reasons.

■ 1. In the first place the recovery was as for specific performance. The evidence shows conclusively, from Oliver's own testimony, which is undisputed, in effect, that the contract finally agreed upon between Oliver and Mrs. Brett provided, simply, that Mrs. Brett would pay the full purchase price of $6,000, for the whole property, and take title accordingly, with the further agreement that Oliver be given the exclusive broker's privilege of reselling the property at an advanced price, the profit from such sale to be divided equally between Mrs. Brett and Oliver. The judgment ordered performance of an entirely different contract, which had been mutually abrogated and substituted by the final agreement, as above set out.

■ 2. Even if the parties had abided by and were now to be held to the original agreement, specific performance thereof may not be exacted of appellant without requiring like performance by appellee. The trial judge found that Giles paid $1,000 of the purchase price of the land, which was $6,000. The finding is not only without support in the evidence, but is di-

rectly contrary to the undisputed testimony, as we view it. Giles testified that he had been at an expense of $1600, sometimes stated $1,800, in connection with this and other transactions with Oliver, but admitted what all the evidence clearly showed, that he paid no part of the purchase price of this property. Nor did he offer in his pleadings, or upon the trial, to pay any part of the purchase price. Failing to do or offer to do equity, he could not ask for equity.

3. Even if Oliver, or Giles for him, was entitled to an equitable interest in the land, it would be only in proportion to the amount he put in it. He never claimed to put in more than $1,800, and the court fixed the amount at $1,000. And yet the trial court rendered judgment decreeing in him an interest of one-fourth in the property. There was no basis in the record for such decree.

4. Giles prayed for only one-half of one-fourth interest in the property. The trial court awarded him a full one-fourth. He prayed in the alternative for a one-fourth interest, to be divided equally between Oliver and him. The court denied Oliver any part, giving all to Giles.

Obviously, upon the case made, the judgment is without support, either in law or equity, and it will be reversed, and the cause remanded.